**KANEB PRODUCTION COMPANY, successor, by name change, to Moran Exploration, Inc. Appellant,**

v.

**GHK EXPLORATION COMPANY and The Oklahoma Corporation Commission of the State of Oklahoma, Appellees.**

No. 66866.

Supreme Court of Oklahoma.

Jan. 24, 1989.

Barth P. Walker, Russell James Walker, Walker, Walker & Driskill, Oklahoma City, for appellant.

Robert G. Gum, Spradling, Alpern, Friot & Gum, Oklahoma City, for appellee, GHK Exploration Co.

SUMMERS, Justice.

Under what circumstances may the Corporation Commission invalidate an earlier forced pooling order for lack of jurisdiction to have entered that earlier order? Our response is that it may do so only when the jurisdictional infirmity appears of record in the earlier proceeding. Otherwise the second order is a collateral attack upon the first as prohibited by 52 O.S. § 111.[1] Thus we must reverse the Commission's order appealed from and remand the matter for further proceedings.

## I. CHRONOLOGY OF EVENTS

On July 2, 1981, Kirby Exploration Co., filed an application with the Corporation Commission to pool certain units underlying Section 6, T5N, R10W, Caddo County, Oklahoma. Moran Exploration, Inc., predecessor by name change to Kaneb Production Co., Appellant, received notice of the application. On September 8, 1981, Kirby sent a proposal letter to Moran stating that Kirby proposed to drill a well to an approximate depth of 22,000 feet. The letter also stated that the estimated cost for the well was $7,400,000 dry and $11,600,000 com-

---

1. 52 O.S. § 111: "No collateral attack shall be allowed upon Orders ... of the Commission made hereunder...."

pleted. Two copies of Kirby's Authority For Expenditure (A.F.E.), were enclosed with the letter.

A hearing was held on the pooling application before a trial examiner of the Commission on October 6, 1981. Moran did not appear at the hearing although it did receive notice of the hearing. A letter sent by Moran to Kirby and dated October 5, 1981, stated:

"Enclosed you will find a fully-executed copy of the AFE evidencing Moran's desire to participate in the captioned well. Please forward a copy of the Joint Operating Agreement for our review. A copy of our well requirements letter will be forthcoming."

Kirby received the letter a few days after the hearing on the pooling application. Then on October 29, 1981, the Commission issued Order No. 201498, naming Kirby as the operator of the unit well and pooling the interests involved. The Order states that a bona fide effort was made to reach an agreement with each Respondent. The Order also states the following.

"That Applicant has not agreed with all of the owners subject hereto to pool interests and to develop each of the units as a unit."

The order was not appealed and became final. On November 3, 1981, Moran sent the following letter to Kirby.

"Please refer to our letter of October 5, 1981 (copy attached) wherein we advised of Moran's intention to participate in the captioned well.

Since we have received a copy of the Order on this unit, I am concerned that our name has not been dropped from this force pooling. I am, therefore, confirming our desire to participate in this well

and again request a copy of the Joint Operating Agreement for our review and subsequent execution."

Kirby did not send Moran a Joint Operating Agreement (JOA), but began location work and then turned over the operations to GHK Exploration, Appellee, which was duly named by the Commission as successor Operator for the well.

GHK sent to Moran an A.F.E., a well insurance agreement, and an operating agreement on March 9, 1982. The GHK A.F.E. projected the total well cost at approximately $12,800,00. Moran signed and returned the A.F.E. and elected not to receive well control or "blowout" insurance. On April 13, 1982 Moran sent a letter to GHK which stated in part: "[w]e have executed that operating agreement and are hereby returning it to you conditioned upon your acceptance of the terms, conditions and amendments set out below." On May 19, 1982, Moran sent a letter to GHK and requested the return of the executed operating agreement and other documents. On June 18, 1982, GHK sent a letter to Moran stating that Moran's interest was pooled, that Moran had elected to participate on November 3, 1981, and that GHK requested payment for past billings. On September 10, 1982, Moran sent a letter to GHK with an enclosed trust agreement offering to make Robert A. Hefner III trustee for Moran's payments to GHK. Moran then sent a letter to GHK on September 28, 1982, and stated that Moran had decided *not* to participate in the well, and requested payment from GHK under the pooling order provision for owners not electing to participate in the well.[2] The well was completed in the Goddard formation in September, 1982, for approximately 1.5 MMCF per day at a cost of approximately $12,000,000.

---

**2.** The head of Moran's Land Department testified that Moran's sole right to participate was not under the pooling order but that: "people used to operate all the time without an operating agreement, a written operating agreement." R. at 115. When asked if Moran participated in the well without an operating agreement he stated that: "We would have been on a temporary basis." R. at 115. When asked to explain "temporary basis" the witness stated that: "Until we worked out the point of pipe and rig which we felt could have been worked out." *Id.* This same witness was asked whether Moran had been temporarily participating under an oral agreement but later changed its position. R. at 116–117. The witness responded: "That is not quite right. We were attempting to reach terms of participation." R. at 117.

## II. COMMISSION ORDER ON APPEAL

On August 31, 1983, Moran filed an application with the Corporation Commission requesting that it find that Moran did not elect to participate in the well drilled by GHK. The proceedings on this application resulted in Commission Order No. 299201, which Order is the subject of this appeal.

In Order 299201 the Commission found that Moran's letter of October 5, 1981, and the returned Kirby A.F.E. showed that Moran made a voluntary pooling agreement with Kirby prior to the pooling order. The Commission concluded that by virtue of such an agreement the Commission had been without statutory authority to force pool Moran's interests, and that Moran was thus not force pooled by the order. The Commission thus concluded that the earlier force pooling order was a nullity by reason of the voluntary pooling agreement it now found to have been in existence.

Kaneb Production Company had become the successor, by name change, to Moran Exploration, Inc. Kaneb appealed Order 299201 to this court, contending that it was an impermissible collateral attack on the pooling order, and that the Commission's finding of a voluntary pooling agreement between Moran and Kirby was not supported by substantial evidence.

## III. JURISDICTION OF THE CORPORATION COMMISSION

 Moran's application requested that the Commission determine Moran's status with respect to the pooling order. The issue before the Commission was whether Moran had elected to participate in the well. The Commission has jurisdiction to clarify a prior order and determine whether a party has satisfied a provision thereof. *Samson Resources v. Oklahoma Corporation Commission*, 742 P.2d 1114 (Okl.1987). The Corporation Commission may clarify or supplement its orders but it may not collaterally attack a prior Commis-

sion order. In *Nilsen v. Ports of Call Oil Co.*, 711 P.2d 98 (Okl.1985), the court stated:

> "In the case of *Cabot Carbon Co. v. Phillips Petroleum Co.* [287 P.2d 675 (Okla.1955)] we specifically recognized the power of the Commission to clarify its previous orders under the authority of 52 O.S. 1951 § 112. In making this ruling we distinguished between the power granted to clarify, or "supplement," previous orders, the exercise of which does not effect a change in the prior order or in the rights accrued under that order, and the powers granted to repeal, amend or modify a previous order. The power to effect a *change* in a previous order, we have held, requires a showing before the Commission of a change in conditions or knowledge of conditions necessitating the repeal, amendment or modification. Failure to make such a showing renders an attempt to modify a prior order subject to the prohibition on collateral attacks set forth by the Legislature in 52 O.S. 1981 § 111." *Id.* 711 P.2d at 102.

No showing of a change in conditions was presented to the Commission. Order 299201 does not "clarify" the pooling order, but rather is a collateral attack on a final order. In *Nilsen v. Ports of Call Oil Co.*, supra, we stated that: "[a] collateral attack is an attempt to avoid, defeat, evade, or deny the force and effect of a final order or judgment in an incidental proceeding other than by appeal, writ of error, certiorari, or motion for new trial." *Id.* 711 P.2d at 101 n. 5. The face of the pooling order pools Moran's interests. The subsequent Order finds that the pooling order did not pool Moran's interests. Thus, our inquiry is whether the collateral attack is proper.

 In *State v. Corporation Commission*, 590 P.2d 674, 677 (Okl.1979), the court states:

> " 'The prohibition against a collateral attack on an order of the Corporation Commission does not prevent inquiry into the jurisdiction of the tribunal where the questioned ruling is relied upon in a sub-

sequent proceeding. The jurisdiction of any court exercising authority over any subject may be inquired into in every other court when the proceedings in the former are relied upon by a party claiming the benefit of that former proceeding.

Consequently, an examination of the prior order may be made in a collateral proceeding for the limited purpose of determining the jurisdiction, or lack thereof, of the issuing tribunal.' " *Id.* 590 P.2d at 677, (citations omitted).

The above quoted language indicates that a final order of the Commission may be examined in a subsequent proceeding to determine if the Commission was possessed of the necessary jurisdiction to issue the prior order. This determination, however, is limited to an examination of the record in the prior proceeding. *Mullins v. Ward,* 712 P.2d 55, 59 n. 7 (Okl.1985); *Harry R. Carlile Trust v. Cotton Petroleum,* 732 P.2d 438, 441 (Okl.1986). In *Mullins v. Ward,* supra, we said:

"A collateral attack on an order of the Commission which is not facially void is impermissible. Art. 9 § 20, Okl.Const. and 52 O.S.1981 § 111. The district court's inquiry into the validity of Commission orders stands confined to determining, from an inspection of the face of the proceedings [i.e., the application, the process by which the parties were notified and the Commission's order], if the Commission had jurisdiction to issue the order. *McDaniel v. Moyer,* Okl., 662 P.2d 309, 312 [1983]; *Chancellor v. Tenneco Oil Co.,* Okl., 653 P.2d 204, 206 [1982]; *Gulfstream Petroleum Corp. v. Layden,* Okl., 632 P.2d 376, 379 [1981]; *Woods Petroleum Corp. v. Sledge,* Okl., 632 P.2d 393, 396 [1981]; and *State v. Corporation Commission,* Okl., 590 P.2d 674, 677 [1979]. A Commission order is deemed void when the face of the record reveals that at least one of the three elements of agency jurisdiction was absent, i.e., jurisdiction over the parties, jurisdiction over the subject matter or

jurisdictional power to pronounce the particular decision that was rendered. *Gulfstream Petroleum Corp. v. Layden, supra* at 379." *Id.* 712 P.2d at 59 n. 7. The above quoted language makes it abundantly clear that a collateral attack of a Commission order is limited to an examination of the face of the record to find a want of jurisdiction.

The record in the original pooling proceeding was introduced as an exhibit in the cause brought by Moran. The application for pooling in that record states that: "[r]espondents and Applicant have not agreed to pool their interests." The pooling order states: "[t]hat Applicant has not agreed with all of the owners subject hereto to pool interests and to develop each of the units as a unit." The face of the record in the pooling proceeding simply does not indicate that Kirby and Moran had a voluntary pooling agreement. The correspondence referred to herein between the parties was not part of that record. Thus the Commission's finding in Order 299201 that the pooling order did not pool Moran's interests was based on evidence outside of the record, which amounts to an impermissible collateral attack on the pooling order.

Kaneb actually contended before the Commission that it (Moran) did not elect to participate under the pooling order. GHK contended that it did. In Order 299201 the Commission made no findings or conclusions as to whether Moran's actions constituted an election to participate under the pooling order, or the effect, if any, of the parties' conduct on the relevant provisions of the pooling order. Thus, those questions are not yet ripe for appellate review at this time and are left for Commission determination on remand.

Commission Order 299201 is reversed and the cause remanded to the Corporation Commission.

All the Justices concur.