ANSON CORPORATION, Appellant,

v.

Ronald M. HILL, Hill Resources, Inc., David A. Galbraith, Executor of the Estate of Lyman E. Galbraith, Deceased, and Trepco 1981–1 Drilling Program, Appellees.

Nos. 70661, 73643.

Supreme Court of Oklahoma.

Oct. 6, 1992.

As Corrected Oct. 21, 1992.

Rehearing Denied Nov. 17, 1992.

584

Moricoli, Wilson, Harris & Dubberstein by John C. Moricoli, Jr., Michael G. Harris, and Donald K. Blackwell, Oklahoma City, for appellant.

Crowe & Dunlevy by James W. George, and Robert E. Bacharach, Oklahoma City, for appellees.

HODGES, Vice Chief Justice.

In June, 1964, the Oklahoma Corporation Commission (Commission) issued an order establishing a 320–acre drilling and spacing unit for the Osborne common source of Supply (Unit) in McClain County. The Commission allowed one well to be drilled to produce from the Unit.

In 1965, a well was completed on the Unit. On August 30, 1982, the petitioner, Anson Corporation (Anson) applied to the Commission for authorization to drill an increased density well on the Unit. The Commission granted Anson's application. Anson filed a sworn affidavit stating that the "Notice and Order Referring and Setting Cause for Hearing" had been mailed to the following:

all parties entitled to share in production from any well drilled to the common source of supply [in the Unit], and all operators of wells producing from said common source of supply located in off-setting units, and/or non-operating working interest owners in a unit operated by the applicant herein.

On October 13, 1982, the Commission granted Anson's application to drill the increased density well. In 1983, Anson completed the increased density well.

On November 17, 1986, the respondents, Ronald M. Hill, Hill Resources, Inc., David A. Galbraith, Executrix of the Estate of Lyman E. Galbraith, deceased, and Trepco 1981–1 Drilling Program, filed an application with the Commission to vacate the 1982 order and order the well shut in. The Commission took evidence on whether the respondents were entitled to personal notice, found that the respondents were indeed entitled to personal notice, and found that they had not received proper notice. The Commission granted the respondent's application (1988 Order).

Anson appealed the Commission's 1988 Order, Appeal No. 70,661 (Appeal I). Anson argued (1) that sections 1031 through 1038 of title 12 of the Oklahoma Statutes

applied to Commission orders, (2) that these sections placed limitations on the Commission's authority to vacate its order, and (3) that the Commission did not adhere to the limitations. Anson also argued that the respondents' application to vacate the 1982 Order was an impermissible collateral attack on the order because the face of the record did not reveal any apparent jurisdictional defect. On February 14, 1989, the Court of Appeals affirmed the Commission's 1988 Order. Anson filed a Petition for Certiorari.

During the pendency of Appeal I, Anson filed an application with the Commission for an order amending the 1982 and 1988 Orders to authorize an increased density well and authorize production from the existing increased density well (cause CD 143748). The respondents filed a petition with this Court to assume original jurisdiction and issue a writ of prohibition. This Court granted the petition and issued an order prohibiting the Commission "from ratifying or affirming its [1982 Order]." The scope of the prohibition was limited and did "not prohibit the Corporation Commission from proceeding and determining cause CD 143748, insofar as it [did] not determine issues presently pending on appeal."

While appeal number 70,661 was pending, the Commission held a hearing on cause number 143748. On June 16, 1989, the Commission issued its order allowing production from the increased density well. The Commission found that its 1982 Order was not void on its face and had only been vacated as to the parties who had not been given proper notice. The respondents in Appeal I, as well as Guy Liebmann, J.G. Liebmann, S.B.C. Oil Company and S.G. &

O. Company, appealed this 1989 Order, Appeal No. 73,643 (Appeal II). In this appeal, the respondents argued (1) that the Commission violated the writ of prohibition, (2) that all production under the 1982 Order constituted overage, so that Anson's increased density well should be subject to a diminished adjusted allowable on future production, and (3) that the Commission's finding that no drainage occurred was not supported by substantial evidence. This Court consolidated Appeal II with Appeal I.

We first address the issues raised in the Petition of Certiorari in Appeal I and, then, address the issues raised in Appeal II.

## I.

■ The first issue raised by the Petition for Certiorari in Appeal I is whether the Commission was prohibited from vacating its 1982 Order by sections 1031 through 1038 of title 12. Anson specifically relies on section 1031(3) [1] and section 1038.[2] Under these provisions, a void judgment may be vacated at any time,[3] but a voidable judgment must be vacated within the time limits of sections 1031 through 1038. However, these provisions only apply to district courts, not the Commission.

■ Oklahoma has adopted the rule of statutory construction that, "where the language of a statute is plain and unambiguous and the meaning clear and unmistakable, there is no room for construction, and no justification exists for interpretative devices to fabricate a different meaning." [4] Further, in absence of a contrary definition, words are to be given the same meaning as that attributed to them by ordinary and common definitions.[5] Section 1031 is

---

1. Okla.Stat. tit. 12, § 1031 (1981), provides:
    The district court shall have power to vacate or modify its own judgments or orders within the times prescribed hereafter:

    .     .     .     .     .

    Third. for mistake, neglect or omission of the clerk or irregularity in obtaining a judgment or order.

    .     .     .     .     .

2. Okla.Stat. tit. 12, § 1038 (1981), provides: "Proceedings to vacate or modify a judgment or

order, ... for causes mentioned in paragraphs 3 and 6 of Section 1031 of this title, shall be within three (3) years...."

3. *See* Okla.Stat. tit. 12, § 1038 (1981).

4. *In re Guardianship of Campbell,* 450 P.2d 203, 205 (Okla.1966).

5. *In re Income Tax Protest of Ashland Exploration, Inc.,* 751 P.2d 1070, 1073 (Okla.1988).

specifically limited to district courts. The term district courts does not include the Commission.[6] Therefore, sections 1031 through 1038 do not apply to the Commission's orders.

## II.

■ The second issue raised by Anson in its Petition for Certiorari is whether the respondents' application to vacate the Commission's 1982 Order constituted an impermissible collateral attack on the order. The Commission has the power to repeal, amend or modify prior unappealed orders upon a showing of change in conditions.[7] A Commission order may be collaterally attacked to determine if the Commission had jurisdiction to issue the order.[8] However, this determination is limited to an examination of the record in the prior proceedings.[9] Any other collateral attack is prohibited by section 111 of title 52.[10]

■ In the present case, Anson argues that the Commission should have limited its determination of its jurisdiction to render the 1982 Order to the record which served as a basis for that order. Instead, the Commission based its decision to vacate the 1982 Order for lack of personal jurisdiction over the respondents on extrinsic evidence.

■ When a Commission order is collaterally attacked, the examining court or tribunal is limited to an examination of the record of the proceedings of the order under attack.[11] If the face of the record reveals that the Commission did not have jurisdiction, then the order is void.

A Commission order is deemed facially invalid *only* when the face of the record reveals the absence of *at least one* of these three requisite elements of agency jurisdiction, i.e., (1) jurisdiction over the parties, (2) jurisdiction over the subject matter, or (3) jurisdictional power to issue the specific order in question.[12]

The present case is analogous to *Union Texas Petroleum v. Corporation Comm'n.*[13] In *Union,* the applicant sought to vacate 640–acre spacing units and establish 160–acre drilling and spacing units. The application failed to list Union as a party entitled to notice, and Union did not receive notice. This Court held:

> The record contain[ed] no notice of a mailing to [Union] and thus the record demonstrate[d] the Commission attempted to proceed against Union's interest in the absence of jurisdiction over the person of that entity. Accordingly, the order's attempt to adjudicate the rights of Union Oil of California [was] ineffective, and a nullity insofar as it purport[ed] to affect its interests.[14]

The holding in *Union,* was reaffirmed in *Capitol Federal Savings Bank v. Bewley.*[15]

In the present case, it is undisputed that the respondents were entitled to notice. The record does not contain any notice or mailing to the respondents. While extrinsic evidence may have been necessary to establish that the respondents were entitled to notice, the face of record clearly fails to establish that the respondents received the required notice. Thus, under

6. *See* OKLA. CONST. art. 7, §§ 1–11 and art. 9, §§ 15–35.

7. *Kaneb Production Co. v. GHK Exploration Co.,* 769 P.2d 1388, 1391–92 (Okla.1989).

8. *Id.* at 1392.

9. *Id.*

10. Okla.Stat. tit. 52, § 111 (1981) provides:
    No collateral attack shall be allowed upon orders, rules and regulations of the commission made hereunder, but the sole method of reviewing such orders and inquiring into and determining their validity, justness, reasonableness or correctness shall be by appeal from such order, rule or regulation shall be regarded as prima facie, valid, reasonable and just. . . .

11. *Kaneb Production Co.,* 769 P.2d at 1392; *Harry R. Carlile Trust v. Cotton Petroleum Corp.,* 732 P.2d 438, 441 (Okla.1986).

12. *Harry R. Carlile Trust v. Cotton Petroleum Corp.,* 732 P.2d at 441; *Mullins v. Ward,* 712 P.2d 55, 59 n. 7 (Okla.1985); Okla.Stat. tit. 52, § 111 (1981).

13. 651 P.2d 652 (Okla.1981).

14. *Id.* at 659.

15. 795 P.2d 1051, 1053 (Okla.1990).

this Court's holding in *Union,* the Commission's attempt to exercise jurisdiction over the respondents was ineffective and a nullity insofar as it affected the respondents' interest.

This holding complies with the right to due process of law under the United States Constitution[16] and the Oklahoma Constitution.[17] As this Court stated in *Capitol Federal Savings Bank v. Bewley:*[18]

Due process requires that life, liberty or property not be deprived by adjudication unless preceded by notice and an opportunity for a hearing appropriate to the nature of the action. The opportunity to be heard is the fundamental requisite of due process of law. This opportunity is wholly worthless without notification of the occasion requiring it to the person whose rights are affected so that he may decide for himself whether to appear or default.[19]

The Commission's own rules recognize that personal notice is necessary to protect the respondents' rights of due process. Commission Rule 8(d)(3) in effect at the time of the filing of the increased density application stated:

For increased well density application, notice of hearing shall also be served by regular mail upon the operator of each adjoining or cornering tract of land or drilling and spacing unit where a well is currently producing from the same formation. If the location of the well is specified, notice is sufficient if mailed to operators of well toward which ... the additional well will be drilled. If the applicant is the operator of a well for which notice is required under this rule, he shall also serve each working interest owner in such well by regular mail.

Not only did the proceedings underlying the 1982 Order fail to comply with due process requirements, they violated the Commission's own rules.

Because the record clearly fails to establish that the respondents received the required notice, the jurisdictional defect is apparent from the face of the record.[20] Therefore, the Commission was within its authority to vacate the 1982 Order. To hold otherwise would allow Anson to benefit from its own error and failure to follow the applicable notice requirements.

## III.

■ We next address Appeal II. The respondents argue that the Commission violated the writ of prohibition by hearing Anson's second application to allow an increased density well on the Unit (cause CD 143748) and allowing production from the increased density well.

The writ issued by this Court only prohibited the Commission from determining those issues pending in Appeal I. Appeal I concerned the issue of whether the Commission properly vacated its 1982 Order. The issues raised in cause CD 143748 were whether there was a geologic necessity for the increased density well and whether Anson's future allowable should be reduced to compensate for drainage from production under the vacated 1982 Order.

The Commission's new increased density order was not a ratification or affirmation of its previously vacated order. Rather, the Commission issued a new order based on its findings that an increased density well was necessary to efficiently drain the unit and that production under the 1982 Order resulted in no uncompensated drainage. Thus, the Commission had the authority to issue a new increased density order and acted within the limitations imposed by the writ of prohibition.

## IV.

■ Respondents also assert in Appeal II that all production under the 1982 Order

---

16. U.S. Const. amend. XIV, § 1 provides: "No state shall ... deprive any person of life, liberty, or property, without due process of law...."

17. OKLA. CONST. art. 2, § 7 provides: "No person shall be deprived of life, liberty, or property, without due process of law."

18. 795 P.2d at 1051.

19. *Id.* at 1053 (citations omitted).

20. *Union Texas Petroleum,* 651 P.2d at 659.

constituted overage so that Anson's increased density well should be subject to a diminished adjusted allowable on future production. The Commission found that Anson's increased density well caused no uncompensated drainage. Thus, production under the 1982 Order did not constitute overage, and Anson's future allowable should not be penalized. The Commission was correct that absent a showing of drainage, past production does not constitute overage.[21]

## V.

■ Respondents' final contention in Appeal II is that the Commission's finding that no drainage occurred is not supported by substantial evidence. A review of the evidence here compels the conclusion that the Commission's new increased density order is supported by substantial evidence.

First, it is undisputed that Anson's increased density well is located in an impermeable reservoir. Wells in impermeable reservoirs are capable of draining smaller areas. Second, Anson's expert refuted the respondents' contention that Anson's increased density well was in pressure communication with a well on respondents' property. Third, a drainage study done by Anson's expert indicated that Anson's increased density well was incapable of draining adjacent units. This evidence supports the Commission's finding that respondents suffered no drainage from production under the 1982 Order.

## CONCLUSION

From the face of the record, the Commission did not have jurisdiction to issue the 1982 Order. Therefore, the Commission properly vacated that order. As to Appeal I, the Court of Appeals' opinion is vacated and the 1982 Order of the Commission is affirmed.

As to Appeal II, there was substantial evidence to support the Commission's order in that cause. Therefore, we affirm the second order of the Commission in cause number 143748.

CERTIORARI PREVIOUSLY GRANTED IN APPEAL NO. 70,661; COURT OF APPEALS' OPINION VACATED; CORPORATION COMMISSION ORDERS AFFIRMED.

OPALA, C.J., and LAVENDER, HARGRAVE, KAUGER and WATT, JJ.

ALMA WILSON and SUMMERS, JJ., concur in result.

---

**21.** *Corporation Comm'n v. Phillips Petroleum*   Co., 536 P.2d 1284 (Okla.1975).