Margaret B. FENT and Jerry
R. Fent, Appellants,

v.

OKLAHOMA NATURAL GAS COMPANY,
a DIVISION OF ONEOK INC., a corpo-
ration, and The Corporation Commis-
sion of The State of Oklahoma, and the
State of Oklahoma, Appellees.

No. 79243.

Supreme Court of Oklahoma.

Oct. 4, 1994.

Rehearing Denied Jan. 31, 1995.

Jerry R. Fent, Oklahoma City, for appellants.

John M. Sharp, Robert A. Huffman, Jr., Huffman, Arrington, Kihle, Gaberino & Dunn, Tulsa, for appellee Oklahoma Natural Gas Co.

Lindil C. Fowler, Jr., Leslie Wilson Pepper, Kent Douglas Talbot, Oklahoma City, for appellee Corp. Com'n.

OPALA, Justice.

The dispositive issue on certiorari is whether the appellate court's earlier pronouncement in *Fent I*[1] operates as a *bar against relitigation* before the Oklahoma Corporation Commission [Commission] of these issues: (a) the district court's cognizance of the customers' claim against Oklahoma Natural Gas Company [ONG], (b) the controlling effect of the Commission rules on the parties' liability for the repair and maintenance of the landowners' gas pipeline and (c) the construction and applicability of Commission Rule 6a to the customers' pending district court claim? We answer in the affirmative.

## I

## THE ANATOMY OF LITIGATION

Margaret B. and Jerry R. Fent [Fents], appellants, live in a house upon a lot platted in 1922. When the house was built, gas meters were usually installed in a protected location, either inside the house, garage, or within some other sheltering structure. At the time the Fents purchased the house in 1966, their gas meter was located in the basement. The Fents and ONG had no written agreement specifying either the location of the gas meter or the point where gas consumption would take place.

On June 6, 1988 the Fents reported the presence of natural gas odor in their backyard. A leak was located in the gas line at a place between the meter in their basement and ONG's easement behind their home. ONG disconnected gas service to the Fents' home, removed the properly-working gas meter from their basement and replaced the original indoor meter with a new one which came to be installed in the backyard utility easement area. Before ONG would restore gas service, the Fents were required (a) to repair a ten-inch gap in the basement pipe-

1. *Fent v. Oklahoma Natural Gas Co.*, Okl.App., 804 P.2d 1146 (1990), *cert. denied*, Jan. 29, 1991 [*Fent I* ].

line left by ONG when the old meter was removed and (b) to install another yard line to connect with the new meter.

### Fent I Litigation

Upon ONG's refusal to reimburse them for the *replacement yard line* and for the *repair of the gap in the piping* where the original meter had been, the Fents brought a district court suit against ONG on October 6, 1988.[2] ONG moved to dismiss the action, contending that the Commission had *exclusive jurisdiction* over the subject matter and that the Fents had *failed to state a claim* upon which relief could be granted. The trial court *dismissed* the Fents' amended petition (a) for *lack* of *jurisdiction* and (b) for *failure to state a cause of action*. The Court of Appeals *reversed* the nisi prius decision, remanding the case for further proceedings.[3] The appellate tribunal held that the trial court *erred* (a) in ruling that it was without jurisdiction of the action (since the Commission is *not* a court of general jurisdiction with power to adjudicate claims for money damages from a public utility's negligent acts) and (b) in concluding the Fents failed to state a cause of action (because, under the terms of Commission Rule 6a [Standards for Gas Service], ONG was responsible for the maintenance of the pipeline up to the output side of the meter in the Fents' basement and was under a duty to repair the gap in the basement line as well as the leak in the yard line).

2. The Fents' amended petition rests their claim on theories of breach of contract and wrongful termination of gas service.

3. *Fent I, supra* note 1 at 1148.

4. The ALJ recommended the Commission issue the following order:

"... Oklahoma Natural Gas has responsibility for the maintenance, repair or replacement of gas service lines located on the property of a gas utility customer *outside* of any utility easement up to the point of delivery, which *shall be the gas meter outflow side,* in the absence of a written agreement between the public utility and the consumer determining otherwise." (Emphasis ours.)

5. Commission Rule 22 provides that an appeal may be brought within ten days *after* the report of the administrative law judge is filed.

The cause so remanded remains pending before the district court.

### Fent II Litigation

While the district court action was pending on remand, ONG filed an application with the Commission requesting (a) an interpretation of the applicable rules and (b) an order that ONG *customers* are responsible for installing and maintaining all piping between the customers' property or curb lines and the customers' point of consumption, regardless of the meter's location upon the premises. The Fents, who were parties to the agency proceeding, objected to ONG's quest, asserting that (a) *their dispute with the utility* had been resolved by *Fent I* and (b) the Commission lacked power to decide the issues placed in controversy.

The administrative law judge [ALJ], who heard the case, concluded that the Commission had jurisdiction to hear the dispute and recommended that ONG be declared responsible for maintaining yard lines located away from utility easements.[4] The Fents, ONG and the Commission's Public Utility Division [Division] all appealed to the Commission *en banc.*[5] The utility customers represented their objection to the Commission's cognizance, arguing that the issue sought to be tendered had been settled by *Fent I.* ONG excepted to certain ALJ findings and recommendations on the grounds that they were contrary to the established rules' interpretation as well as unsupported by evidence.[6]

6. ONG excepted to the following ALJ-recommended "findings" that (1) under the rules, it did not "seem to be the Commission's intent" to hold the gas utility customer responsible for the service line leading from the utility's main distribution line in the public easement to the gas meter located on the customer's private property; (2) from 1922 to 1947 Commission rules did not address the liability of the consumer or ONG for the care and maintenance of customer service lines and (3) in the absence of any written agreement to the contrary, the Commission should issue an order declaring ONG responsible for the maintenance, repair or replacement of gas service lines located on the property of its customers outside of any utility easement, up to the point of delivery, which shall be the outflow side of the meter. ONG excepted on the ground that these findings were contrary to Commission rules as well as to its established interpretation. The Commission's Public Utility Division also took exception to the ALJ findings.

The Commission ruled that it has jurisdiction and the gas utility *customer* is financially responsible for the installation, maintenance, repair or replacement of the gas yard line—the line extending between the utility easement and the premises served—regardless of the meter's original location away from the utility easement.

The Fents appealed, urging that *Fent I* had settled ONG's liability for the costs of the re-installation. In support of their position they direct us to some excerpts from *Fent I* which indicate that under Commission Rule 6a ONG is responsible for the maintenance of the Fents' gas pipeline as well as for the repair of the ten-inch gap left in the aftermath of the removal of the meter and of the leaking gas pipeline section. The Fents argued that the appellate court pronouncement bars ONG from relitigating its liability before the agency forum. The Court of Appeals held that (a) no language in *Fent I* raises a barrier to the Commission's consideration of ONG's application and (b) the agency has jurisdiction to interpret its own rules. When called upon to construe an administrative rule, the opinion explains, courts generally show great deference to agency interpretation of its own language. Moreover, the appellate court observed, the Commission's ruling would be useful in the post-remand district court proceedings directed by *Fent I*.

## II

### THE RELITIGATION BAR

The Fents assert that in *Fent I* the Court of Appeals determined that (a) the trial court had *subject matter jurisdiction* of their private dispute with ONG, and (b) their petition had *stated a claim upon which relief could be granted*. In resolving the latter issue, the Fents urge, the appellate court settled ONG's liability, under the terms of Commission Rule 6a, for the maintenance and repair of their gas pipeline.

ONG and Commission counter by explaining that the issues in *Fent I* and *Fent II* are different. In *Fent I*, they urge, the reviewing tribunal was called upon to determine whether the district court erred in *giving ONG summary judgment* for want of subject-matter jurisdiction. According to ONG, the appellate court neither interpreted the Commission rule now in issue, nor did it decide that the Fents' claim was governed by any rule; it simply concluded summary judgment could not stand because there were fact issues to be tried. ONG adds that its sole purpose in bringing this proceeding before the agency was to assist the district court in identifying the rules that govern public utility liability in contest between these parties.

### A.

**ONG's Argument For Treating *Fent I* As Summary Judgment's Reversal That Settles *No More* Than The Presence Of Fact Issues To Be Tried Must Fail Because Post–Appeal Construction Of The Meaning And Effect Of The Decisional Process On Review Is Governed Solely By The Face Of The District Court's Judgment Roll Viewed Together With The Appellate Pronouncement**

 In support of their position that in *Fent I* the dismissal quest was treated as one for summary judgment under 12 O.S.Supp. 1984 § 2012(B),[7] ONG and the Commission appear to rely on evidentiary material tendered to the district court in its decisional stages. These materials were *not* incorporated into the appellate record before us. But even if they had been included, we could not consider them in pronouncing what was settled by *Fent I*. *Evidence lies outside the*

7. The pertinent terms of 12 O.S.Supp.1984 § 2012(B) are:
 " * * * If, on a motion asserting the defense numbered 6 of this subsection to dismiss for failure of the pleading to state a claim upon which relief can be granted, *matters outside the*

*pleading are presented to and not excluded by the court,* the motion shall be treated as one for summary judgment and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by the

*judgment roll of an action.*[8] Post-appeal construction of *Fent I's* meaning and effect must be garnered solely from the face of the district court's judgment roll viewed together with the appellate pronouncement in that case.[9]

Once a ruling has become final, either for want of an appeal or, as in *Fent I,* in consequence of an appellate court's decision, any controversy over the meaning and effect of that decision must be resolved by resort solely to the *face of the judgment roll.*[10] The court's inquiry into a judgment's meaning cannot extend beyond the instruments that are comprised within the record proper[11] of the case. Proceedings *dehors* the judgment roll, i.e., those not apparent from its four corners, may not be examined. There can be but one appellate review on the *full tran-*

*script of trial proceedings.*[12] To provide support for its *summary judgment* theory, it was incumbent upon ONG to make the *entire* judgment roll in *Fent I* a part of the record in this appeal. *This the utility did not do.*

For ascertaining what actually stood adjudged in the earlier lawsuit *or* for identifying the issues actually barred from relitigation,[13] we must hence look here to the Court of Appeals' opinion in *Fent I.*[14] *Fent I* described (a) ONG's quest as one *"to dismiss"* the Fents' petition and (b) the district court's ruling as one which *"dismissed* Appellants' amended petition."[15] That characterization is binding on us here. A motion to dismiss for failure to state facts upon which relief may be granted tests the pleading's sufficiency to support a legally cognizable claim.[16] Even if we assume that *Fent I* did

rules for summary judgment. * * * " [Emphasis added.]

8. *See* the terms of 12 O.S.1991 § 32.1, which *specifically* provide that "[e]vidence must not be recorded."

9. *See infra* note 13 for the principle that this court may resort to appellate pronouncements in an effort to ascertain the meaning and effect of a prior decision on review.

10. The district court's judgment roll for the Fents' claim *is not in this record.* Unlike the trial courts, an appellate court may *not* take *judicial notice of any material* on file below, which is not incorporated into the record for review. The meaning, legal effect and validity of a nisi prius adjudication cannot be assessed solely from the four corners of a journal entry that memorializes the terminal ruling (or some other disposition) in the case. *That assessment, both here and below, must be made upon review of the entire judgment roll (or record proper),* which consists of "... the petition, the process, return, the pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material acts and proceedings of the court...." 12 O.S.1991 § 32.1; *Veiser v. Armstrong,* Okl., 688 P.2d 796, 800 (1984); *Timmons v. Royal Globe Ins. Co.,* Okl., 713 P.2d 589, 591–592 (1985); *Willard v. Kelley,* Okl., 803 P.2d 1124, 1134 (1990); *Dyke v. Saint Francis Hosp., Inc.,* Okl., 861 P.2d 295, 303 n. 27 (1993); *Dickason v. Dickason,* Okl., 607 P.2d 674, 677 (1980). The rule of construction is the same although *Fent I* may have dealt with a final *prejudgment order* within the meaning of 12 O.S.1991 § 953 rather than a true judgment in the sense of 12 O.S.1991 § 681. In short, our examination is limited to instruments which qualify for inclusion in the judgment roll.

11. The term *"record proper"* is synonymous with *"common-law record"* and *"judgment roll".* See *Rodgers v. Higgins,* Okl., 871 P.2d 398, 405 n. 31 (1994); *Messenger v. Messenger,* Okl., 827 P.2d 865, 870 n. 20 (1992); *Veiser, supra* at 800 (1984); *Mid–Continent Pipe Line Co. v. Seminole County Excise Bd.,* 194 Okl. 40, 146 P.2d 996, 1000 (1944); *see also Mullins v. Ward,* Okl., 712 P.2d 55, 59 (1985), for our discussion of the judgment roll's application to the agency process.

12. *Timmons, supra* note 10 at 592.

13. While the record on a prior appeal does not constitute a part of the record in the later appeal, this court can take judicial cognizance of its own or of another appellate court's former opinions to inform itself of the binding effect that is due past appellate pronouncements. *Chandler v. Denton,* Okl., 741 P.2d 855, 862 n. 9 (1987); *Chamberlin v. Chamberlin,* Okl., 720 P.2d 721, 724 (1986); *Timmons, supra* note 10 at 592; *Oklahoma City Electric Gas & Power Co. v. Baumhoff,* 21 Okl. 503, 96 P. 758, 760 (1908). This doctrine is but a narrow exception to the general norm by which, on consideration of an appeal, the appellate court is strictly limited to the record before it.

14. *Timmons, supra* note 10 at 592.

15. *Fent I, supra* note 1 at 1147 (emphasis added).

16. *Hulsey v. Mid–America Preferred Ins. Co.,* Okl., 777 P.2d 932, 936 n. 15 (1989) (a claim must not be dismissed for failure to state a legally cognizable claim unless it can be determined as a matter of law that the pleader cannot prove any set of facts that would warrant relief in his/her favor).

reverse a summary judgment rather than a dismissal order, our view of its impact on the agency process would not be different. ONG's attempt to hale the Fents before the Commission amounts to an impermissible collateral attack on *issues settled* by *Fent I*— issues that are barred from agency relitigation by the doctrine of issue preclusion. *See* Part II(B) and (C), *infra*.

## B.

### In Post–*Fent I* District Court Proceedings All Issues Decided In *Fent I* Are Protected From Relitigation By The Settled–Law–Of–The–Case Doctrine

The Fents argue that in *Fent II* the Court of Appeals overlooked and ignored the *issues settled by Fent I*—(a) the district court's jurisdiction over their claim and (b) ONG's liability for the maintenance and repair of the gas pipeline in their backyard. This settled law of the case, the Fents urge, prohibits relitigation of the same issues before the Commission. We view this argument as cast in overbroad terms.

The *settled-law-of-the-case doctrine* operates to bar relitigation *in the same case* of issues once decided by an appellate opinion.[17] Post–*Fent I* proceedings *in the district court* must *indeed* be governed by the law settled in *Fent I*. Other principles of law, which will be discussed later in this opinion, govern the restraint imposable by *Fent I* on the Commission.

## C.

### In Post–*Fent I* Proceedings Before The Corporation Commission Issues Decided In *Fent I* Are Protected From Relitigation By The Principles of Collateral Attack And Issue Preclusion

In *Fent II* the Commission stands bound by *Fent I* to the very same extent the district court would have been had it been proceeding in the aftermath of an agency case that stood then in the very same procedural posture.[18] Under the doctrine of issue preclusion (or collateral estoppel),[19] once a court has decided an issue of fact or law necessary to its judgment, the same parties or their privies may not relitigate the issue in a suit brought upon a different claim.[20] The principle of issue preclusion applies with equal force to jurisdictional as well as to nonjurisdictional questions. It operates to bar from relitigation both correct and erroneous resolutions of jurisdictional challenges[21] but it cannot be made binding on anyone unless the party against whom the earlier decision is interposed had "full and fair opportunity" to litigate the critical issue in the earlier case.[22] No more than a *single opportunity* is afforded by law to litigate a disputed jurisdiction of a tribunal. We must hence look to *Fent I* for the *preclusive effect* of that opinion under the teachings of issue preclusion.

### *The Issues Settled By Fent I*

*Fent I* settles three issues. It establishes that (a) the district court *has* cognizance of

17. The appellate pronouncement is deemed to settle not only all questions actually decided but also those which, on the record, appear to have been resolved by implication. An appellate opinion has a binding effect only to the extent that it pronounces the settled law for the case. *Handy v. City of Lawton*, Okl., 835 P.2d 870, 873 (1992); *Panama Processes v. Cities Service Co.*, Okl., 796 P.2d 276, 283 n. 27 (1990); *Timmons, supra* note 10 at 592; *Mobbs v. City of Lehigh*, Okl., 655 P.2d 547, 549 n. 5 (1982); *Jones v. Medlock*, 201 Okl. 109, 202 P.2d 212, 213 (1949); *Reeves v. Agee*, Okl., 769 P.2d 745, 756 (1989).

18. *Veiser, supra* note 10 at 800.

19. Issue preclusion and collateral estoppel are two different names for the same legal doctrine.

The former was introduced through the Restatement, the latter is a common-law term of long usage. Restatement of Judgments (Second) § 27, Comment b; *Underside v. Lathrop*, Okl., 645 P.2d 514, 517 n. 8 (1982); *Veiser, supra* note 10 at 799 n. 7.

20. *Allen v. McCurry*, 449 U.S. 90, 94–95, 101 S.Ct. 411, 414–415, 66 L.Ed.2d 308 (1980); *Underside, supra* note 19 at 516–517; *Veiser, supra* note 10 at 800.

21. *Duncan v. Seay*, Okl., 553 P.2d 492, 494 (1976); *Bruce v. Miller*, Okl., 360 P.2d 508, 511 (1961); *White v. White*, Okl., 607 P.2d 700, 702 (1980) (Opala, J., concurring in result).

22. *Underside, supra* note 19 at 516; *Veiser, supra* note 10 at 800.

the Fents' claim; (b) the Commission rules *govern* the parties' liability for the repair and maintenance of the gas pipeline on the Fents' premises;[23] and (c) Rule 6a applies to the Fents' claim and its construction is not inconsistent with ONG's liability. None of these issues can now be relitigated in a collateral proceeding before the Commission.

■ The Fents assert that in *Fent I* the appellate court *also settled the issue of ONG's liability* under Commission Rule 6a. For support of this contention they direct us to certain statements in the opinion.[24] For the reasons to be explained, we reject their notion of settled liability.

■ Liability is not generally established *sans* judgment. *While Fent I* may have addressed some of the ingredients or elements of liability, it did not decide the ultimate issue. The record does not show that the facts were either stipulated at nisi prius or settled on appeal. *The case was remanded, not with directions to enter judgment for the Fents, but with instructions to adjudicate a claim found to be cognizable in the*

*forum whence it came.* The statements the Fents rely upon as conclusive of ONG's liability merely announce a legal principle to be applied on remand *after* the facts have been resolved. When, on reversal, a cause is remanded for trial, it returns to nisi prius as if it had never been decided—save only for the "settled law" of the case.[25]

■ ONG stands barred by issue preclusion from relitigating before the agency any settled *issue that may affect the Fents' pending district court claim. Only the latter court* has cognizance to proceed with that action. The Commission's input into the decisional post–*Fent I* process must await and stand dependent upon the district court's willingness to entrust the agency with reference of some yet-to-be-settled issue by utilizing the doctrine of primary jurisdiction.[26]

### The Commission's Exercise Of Power To Settle Issues Decided In Fent I Constitutes An Impermissible Collateral Attack

■ Judicial acts of the district court

---

**23.** *Fent I* notes that the "parties agree that the ownership and responsibility for maintaining gas pipelines is established and controlled by the rules of the Commission." *Fent I, supra* note 1 at 1148.

**24.** The Fents rely on these statements in *Fent I, supra* note 1 at 1148:

"The threshold question of which party is responsible for the pipeline across ONG's easement to Appellants' residence has been determined in the Corporation Commission by rules.... *Pursuant to Rule 6a, ONG was clearly responsible for the maintenance of the gas pipeline* from its easement to the output side of the pipeline coming from the meter in [the Fents] basement. Thus, when *ONG* removed the properly working meter from Appellants' basement, it *had a duty to repair the ten-inch gap* left from removal of the meter and the leaking gas pipeline coming from its easement." (Emphasis added.)

**25.** *Seymour v. Swart,* Okl., 695 P.2d 509, 512–513 (1985); *Dyke, supra* note 10 at 303.

**26.** The *primary jurisdiction doctrine* governs the allocation of cognizance between a federal court and one of the government's administrative agencies. *United States v. Western Pacific Railroad Co.,* 352 U.S. 59, 63, 77 S.Ct. 161, 164, 1 L.Ed.2d 126 (1956); *Nader v. Allegheny Airlines, Inc.,* 426

U.S. 290, 303–305, 96 S.Ct. 1978, 1986–1987, 48 L.Ed.2d 643 (1976); *Maislin Industries, U.S. v. Primary Steel, Inc.,* 497 U.S. 116, 119–120, 110 S.Ct. 2759, 2762, 111 L.Ed.2d 94 (1990); *Sears, Roebuck & Co. v. San Diego Cty., Etc.,* 436 U.S. 180, 199, 98 S.Ct. 1745, 1758, 56 L.Ed.2d 209 (1978); *Marshall v. El Paso Natural Gas Co.,* 874 F.2d 1373, 1376–1377 (10th Cir.1989). "'The doctrine of primary jurisdiction does not necessarily allocate power between courts and agencies, for it governs only the question whether the court or agency will *initially* decide a particular issue, not the question whether court or agency will *finally* decide the issue.'" *Sears, supra,* 436 U.S. at 199 n. 29, 98 S.Ct. at 1758 n. 29, (quoting Professor Davis, 3 K. Davis, ADMINISTRATIVE LAW TREATISE § 19.01, p. 3 (1958) (emphasis in original)). The primary jurisdiction doctrine is used where a claim *is originally cognizable in federal courts.* It comes into play whenever adjudication of the claim calls for resolution of issues which under a regulatory scheme had been placed within the special competence of an administrative agency. *Western Pacific Railroad, supra,* 352 U.S. at 64, 77 S.Ct. at 165; *Marshall, supra* at 1376–1377. A district court's judicial process will be suspended pending disposition of the issues referred to the administrative body. *Western Pacific Railroad, supra; Marshall, supra.* This court appears to have invoked the primary jurisdiction doctrine without adopting it by name. *Stipe v. Theus,* Okl., 603 P.2d 347, 349–350 (1979).

are protected from collateral attack[27] in the same manner and with the same force as are Commission orders.[28] The law's protection against an impermissible collateral attack prevents both the district court and the Commission from encroaching upon each other's jurisdiction by entertaining inquiries into issues that stand decided by the other tribunal. A collateral attack launched before the agency on a district court order, like one made in the district court on a nonfacially void Commission order,[29] is impermissible. This is so because such attack is clearly intended to question, avoid, defeat, or evade another tribunal's facially valid decision, or to deny its force and effect, in a manner not authorized by law.[30]

The Commission's exercise of power to settle issues already decided in *Fent I* amounts to an impermissible collateral attack upon rights adjudicated by *Fent I*. By assuming cognizance of issues settled in *Fent I* and still *sub judice* at nisi prius on remand, the Commission also placed itself in an intol-erable position of conflict with the earlier-exercised cognizance of the district court.[31] The latter tribunal is entitled to proceed to final adjudication free of agency interference. It may, if it so desires, refer for agency resolution under the doctrine of primary jurisdiction[32] some still-*unsettled* issues within the Commission's competence.

## SUMMARY

■ Once an issue has been reached and decided, the doctrine of issue preclusion operates to bar its relitigation in the same as well as in some other forum. Because *Fent I* "fully and fairly" settled (a) the district court's jurisdiction of the Fents' claim against ONG, (b) the construction of Rule 6a and (c) that rule's effect on the claim, reconsideration of those issues before the Commission would amount to an impermissible collateral attack.[33]

On certiorari previously granted, the Court of Appeals' opinion is vacated and the Corpo-

**27.** *Chandler, supra* note 13 at 941; *State ex rel. American Flyers Airline Corp. v. Superior Court of Creek County,* Okl., 435 P.2d 131, 133 (1967).

**28.** Art. 9, § 20, Okl. Const.; 52 O.S.1991 § 111; *Kaneb Production Co. v. GHK Exploration Co.,* Okl., 769 P.2d 1388, 1391 (1989); *Mullins, supra* note 11 at 59; *Gulfstream Petroleum Corp. v. Layden,* Okl., 632 P.2d 376, 379 (1981); *State v. Corporation Commission,* Okl., 590 P.2d 674, 677 (1979). *Woods Petroleum Corp. v. Sledge,* Okl., 632 P.2d 393, 396 (1981), teaches that the district court cannot entertain collateral attacks on Commission orders.

**29.** The district court's inquiry into the validity of Commission orders stands confined to determining, from an inspection of the face of the proceedings [i.e., the application, process by which the parties were notified and the Commission's order], if the Commission had jurisdiction to issue the order. *Oklahoma Tax Com'n v. City Vending,* Okl., 835 P.2d 97, 100 n. 9 (1992); *Kaneb, supra* note 28 at 1392; *Mullins, supra* note 11 at 59 n. 7; *Gulfstream, supra* note 28 at 396; *State, supra* note 28 at 677. A Commission order is deemed void when the face of the record reveals that at least one of the three elements of agency jurisdiction was absent, i.e., jurisdiction over the parties, jurisdiction over the subject matter or jurisdictional power to pronounce the particular decision that was rendered. *Gulfstream, supra* note 28 at 379.

**30.** *Kaneb, supra* note 28 at 1391; *Hixson v. Cook,* Okl., 379 P.2d 677, 684 (1963); *May v. Casker,* 188 Okl. 448, 110 P.2d 287 (syllabus 1) (1940).

**31.** *McAdams v. Dist. Ct. of Oklahoma County,* 197 Okl. 237, 169 P.2d 1011, 1012 (1946).

**32.** We do not imply that in the course of post–*Fent I* proceedings the district court *should* secure agency input by utilizing the primary jurisdiction device, if no issues are left undecided which fall within agency competence. For a full explanation of primary jurisdiction, see *supra* note 21.

**33.** The Fents raise other issues in support of their challenge to the Commission's assumption of jurisdiction. Because our decision today establishes that *Fent I* is the settled law of the case for (a) the district court's cognizance of the Fents' claim and (b) the meaning of Rule 6a in its application to the Fents' dispute, we need not and do not address those issues.

ration Commission's order is reversed.[34]

All Justices concur.

**34.** Our pronouncement *does not* question the general power of the Commission to regulate utilities by rulemaking and to interpret its own rules. It addresses itself *narrowly* to the agency's attempt to affect the Fents' pending district court claim. Nor do we comment on the effect this opinion may have on other claims against ONG, now in progress, which may tender like or similar issues.