**Jack L. GABBERT, Joseph R. Jones, Jr., and Bobby L. Williams, Petitioners/Appellants,**

v.

**BOARD OF REVIEW for the OKLA-HOMA EMPLOYMENT SECURITY COMMISSION; Oklahoma Employment Security Commission; and Bridge-stone/Firestone, Inc. c/o The Frick Company, Respondents/Appellees.**

No. 86588.

Court of Civil Appeals of Oklahoma, Division No. 1.

April 15, 1997.

Certiorari Denied July 9, 1997.

Gary B. Homsey, Gary B. Homsey & Associates, and Anthony D. Degiusti, Oklahoma City, for Petitioners/Appellants.

Cara S. Nicklas, Oklahoma City, for Respondent/Appellee Oklahoma Employment Security Commission.

Brooke S. Murphy, Harvey D. Ellis, Jr., J. Jeremy Tubb, Crowe & Dunlevy, P.C., Oklahoma City, for Respondent/Appellee Bridgestone/Firestone, Inc.

## OPINION

BUETTNER, Judge.

Beginning in July 1994, Petitioners Jack L. Gabbert, Joseph R. Jones, Jr., and Bobby L. Williams participated in an economic strike against their employer, Bridgestone/Firestone, Inc. (Bridgestone). After they received notification in early 1995 from Bridgestone that it had hired permanent replacements, Petitioners filed for unemployment insurance benefits pursuant to the Oklahoma Employment Security Act of 1980, 40 O.S.1991 § 1–101 et seq.

Petitioners were initially awarded, and paid, benefits by the Oklahoma Employment Security Commission (OESC).[1] Bridgestone filed an administrative review petition with the Board of Review of the Oklahoma Employment Security Commission. The Board of Review reversed the decision and denied the award of benefits. Petitioners failed to properly seek review of that decision in District Court and their petition for review was dismissed, making the Board of Review order final. Because the final order was one denying benefits, and because Petitioners had received benefits during the pendency of the appeal process, OESC charged Petitioners with overpayments pursuant to 40 O.S. 1991 § 2–613.[2] Petitioners disagreed with the overpayment assessment and asked for a hearing on the issue.[3]

Petitioners argued two points: (1) the Board of Review's final decision denying them benefits could not be invoked or used as evidence in the overpayment case, and (2) failure to consider the merits of the benefits decision in the overpayments hearing denied them due process of law. The OESC Appeal Tribunal found that the only issue before it was whether the determination of overpayments was valid and correct, there being no allegation that Petitioners did not receive the benefits in the amount alleged. The Board of Review affirmed that decision. Petitioners appealed the Board of Review's order to the District Court of Canadian County, pursuant to 40 O.S.1991 § 2–610, which affirmed the Board of Review's decision.

Petitioners' first proposition of error, that the final Board of Review order denying them benefits could not be used in the overpayment determination, requires interpretation of 40 O.S.1991 § 2–610A,[4] which states:

---

1. 40 O.S.1991 § 2–612 provides that benefits awarded must be promptly paid despite the pendency of periods in which to file appeals or the filing of appeals.

2. Because Petitioners were not alleged to have received benefits through false statements, misrepresentation or by failing to disclose material facts, overpayments would not be repaid except in the event Petitioners had a future award of benefits, in which case the overpaid amount would be deducted from the front end of future payable benefits. 40 O.S.1991 § 2–613.

3. The record does not contain a transcription of the hearing, but all parties agree that the hearing took place and that the three Petitioners were present. The parties' briefs reveal that they do not dispute the facts and that what is before us on review are questions of law.

4. 40 O.S. § 2–610A was enacted in 1991, effective September 1 of that year. All section references are to Title 40 unless otherwise noted.

Any findings of fact or law, judgment, conclusion or final order made by the Oklahoma Employment Security Commission, its referees, the Appeal Tribunal or Board of Review in an unemployment insurance proceeding shall not be conclusive or binding in any separate or subsequent action or proceedings, and shall not be used as evidence in any separate or subsequent action or proceedings, between an individual and his or her present or prior employer in any other forum regardless of whether or not the prior action was between the same or related parties or involved the same facts.

■ Petitioners claim the overpayment action was separate or subsequent to the main action, allowing them to collaterally attack the Board of Review's final order denying them benefits. Respondents contend that the overpayment action is not separate or subsequent, but is an extension of the original case, akin to executing a judgment. Because the words of the law are subject to more than one meaning, it is ambiguous and subject to judicial interpretation or construction.[5] Construction of an ambiguity in a statute requires reasonableness and "one that will avoid absurd consequences while preserving legislative intent." *Association for Equitable Taxation v. City of Oklahoma City,* 901 P.2d 800, 804 (Okla.1995).

■ We have not found any legislative history explaining the enactment of § 2–610A, and the plain language of the statute does not reveal legislative intent. We construe § 2–610A's "separate or subsequent" language to mean actions not emanating from the original action. It appears that § 2–610A was intended to prevent the use of the collateral estoppel doctrine in other cases in which findings by the OESC might be relevant. The statute specifically refers to

other actions between the employee and his employer or prior employer in another forum. For example, an employee may be terminated from his employment for misconduct. If he applies for unemployment insurance pursuant to the Oklahoma Employment Security Act of 1980 and a final order denies him benefits because the discharge was for misconduct, that decision could not be used procedurally or substantively in a district court action filed by the employee against his employer for wrongful termination.[6]

■ In the case at bar, however, the overpayment procedure is wholly dependent on, and emanated from, the denial of benefits by the Board of Review after payment of those benefits authorized by the OESC. It is analogous to execution on a judgment. In execution of judgment proceedings, a party may not go behind, or relitigate the judgment.[7] In execution proceedings, the party may defend against the execution, but not by attacking the judgment.[8] In this case, the OESC was attempting to enforce the final judgment that unemployment benefits were not properly paid. The legislative intent of § 2–612 is to provide prompt payment of benefits even when entitlement to benefits is disputed. If it is finally determined that an employee is not entitled to benefits, § 2–613 allows the benefits to be declared overpayments, and recouped if and when the former employee seeks benefits in the future. In proceedings to establish the overpayment, the former employee may raise defenses, such as never having received the benefits, or not having received the amount alleged to have been paid, but may not attack the original entitlement decision.

■ Petitioners' argument would also create a conflict between § 2–610A and § 2–608,

---

5. Ambiguity may be defined as "the condition of admitting of two or more meanings, of being understood in more than one way, or of referring to two or more things at the same time." *Webster's Third New International Dictionary,* 1986.

6. Sworn statements produced in the OESC record, however, are not precluded for impeachment use in a separate or subsequent action.

7. Once an order is final, either for want of an appeal or because mandate has issued after the

entering of an appellate opinion, "any controversy over the meaning and effect of that decision must be resolved by resort solely to the *face of the judgment roll." Fent v. Oklahoma Natural Gas Company,* 898 P.2d 126, 132 (Okla.1994) (emphasis in original).

8. For instance, in a garnishment proceeding, the garnishee may claim a set off or a defense. 12 O.S.1991 § 1178.

which makes final OESC decisions conclusive for all purposes as between the OESC, the claimant, and employers with notice. Repeal of statutory provisions by implication is not favored, and a construction which gives effect to both statutes is preferable. *City of Sand Springs v. Department of Public Welfare,* 608 P.2d 1139, 1151 (Okla.1980). Our construction allows both statutes to fulfill their legislative purposes.

■ There was no error in using the final order denying benefits as the basis for the overpayment determination. After it became final, the entitlement decision could not be collaterally attacked in the overpayment proceeding. *Cf. Oklahoma Tax Commission v. City Vending,* 835 P.2d 97, 99 (Okla.1992) (failure to appeal from Tax Commission order allows the order to become final and impervious to collateral attack in a subsequent injunction proceeding.)

Petitioners' final contention is that they were denied due process because they were not given the opportunity to appeal the decision denying unemployment benefits. The contention is not supported by the record. Petitioners utilized § 2–610 and appealed the Board of Review decision to district court. However, Petitioners did not include the OESC, a jurisdictional party, in their appeal. In *Oklahoma Employment Security Commission v. Carter,* 903 P.2d 868, 871 (Okla. 1995), the court held that when the "ten-day appeal period provided in 40 O.S. § 2–610 has run without all necessary parties being named, the district court is without jurisdiction." Because of the effect of *Carter,* Petitioners dismissed their appeal. Petitioners have not established a denial of due process.

For these reasons, we affirm the order of the District Court which found Petitioners liable to the OESC for overpayments.

AFFIRMED.

HANSEN, P.J., and ADAMS, C.J., concur.