KINGWOOD OIL COMPANY, a Corporation, Plaintiff in Error,

v.

CORPORATION COMMISSION of the State of Oklahoma, and Cleary Petroleum, Inc., Defendants in Error.

No. 40572.

Supreme Court of Oklahoma.

Nov. 10, 1964.

C. A. McKenzie, J. S. Gill, Oklahoma City, for plaintiff in error.

Monnet, Hayes, Bullis, Grubb & Thompson, Oklahoma City, for defendant in error Cleary Petroleum, Inc.

Cecil Munn, Fort Worth, Tex., Nathan Scarritt, Enid, T. Murray Robinson, Oklahoma City, amici curiæ, Champlin Oil & Refining Co.

Ferrill H. Rogers, Conservation Attorney, Oklahoma City, for defendant in error Corporation Commission of Oklahoma.

JACKSON, Justice.

This is an appeal by Kingwood Oil Company from an Order of the Corporation Commission entered after proceedings initiated there by Cleary Petroleum, Inc., for the purpose of obtaining an increased allowable for Cleary's Penner No. 1 well located in the SE¼ of Sec. 8, Township 2 North, Range 21 ECM, Beaver County, Oklahoma. Before beginning the proceedings, Cleary had obtained an agreement from the owners of all the royalty under said southeast quarter not to demand the drilling of another well on the quarter section (which was subject to an 80-acre drilling and spacing order) in case Cleary should be successful in obtaining an in-creased allowable for Penner No. 1 from the Commission.

Pertinent portions of the findings and order of the Commission are as follows:

"1. That this is an application of Cleary Petroleum, Inc., for an order establishing allowable for the Lower Member of the Upper Morrow Sand common source of supply in its Penner No. 1 well * * *.

"* * *

"5. The Lower Member of the Upper Morrow Sand common source of supply * * * underlies all of the SE/4 of Section 8 * * *. The Penner No. 1 well will effectively drain all of the economically recoverable hydrocarbons from the Lower Member of the Upper Morrow Sand common source of supply underlying said SE/4 of Section 8. The expected recovery of oil and gas from said common source of supply producing from the Penner No. 1 Well is not sufficient to justify the drilling of a second well on said quarter section to said common source of supply.

"* * *

"7. That in the interest of securing the greatest ultimate recovery of oil and gas from the pool, in order to prevent waste, and to protect the correlative rights, this application should be granted."

The Commission then granted Cleary an allowable "for the Lower Member of the Upper Morrow Sand common source of supply found in its Penner No. 1 well in the SE/4 of the SE/4 of the SE/4 of Section 8 * * * of 180 per cent of the regularly assigned allowable for an 80-acre unit * * *". The order further provided that the increased allowable should apply only so long as no more than one well was producing from the common source of supply in the southeast quarter.

Kingwood Oil Company, the appellant, was the owner of an oil and gas lease on the northwest quarter of Section 16, off-

setting the Cleary lease diagonally to the southeast. Kingwood had drilled two wells on its lease, which produced from the same common source of supply, and was subject to the same 80-acre drilling and spacing order, as Cleary's Penner No. 1 well. Kingwood had appeared in opposition to Cleary's application, and now appeals from the Commission's order, presenting five propositions.

The first one is to the effect that the order of the Commission violates the correlative rights of Kingwood.

Under this proposition Kingwood argues (1) that it has "the correlative right to produce as many wells upon its unit as does Cleary upon its unit" and (2) that Kingwood is entitled to deplete its share of the reservoir at a rate commensurate with that of Cleary.

 The term "correlative rights" has been defined as a convenient method of "indicating that each owner of land in a common source of supply of oil and gas has legal privileges as against other owners of land therein to take oil and gas therefrom by lawful operations conducted on his own land, limited, however, by duties to other owners not to injure the source of supply and by duties not to take an undue proportion of the oil and gas". Summers, Oil and Gas, Vol. 1, Sec. 63.

Under this definition of "correlative rights", cited by Kingwood in its brief, we find no guarantee as to the number of wells to be drilled, or as to the relative rates at which each owner is entitled to deplete his share of the reservoir. The right of the individual owner to take oil or gas from the reservoir in lawful operations is limited only by a duty to other owners (1) not to injure the source of supply and (2) not to take a disproportionate part of the oil and gas.

Kingwood does not argue, and the record does not show, that the common source of supply would be injured by Cleary's operations under the Commission order. As to whether Cleary would be getting an undue proportion of the oil and gas, we note

that under the order, Cleary would be permitted to produce from its 160 acre lease only 180 barrels of oil for every 200 barrels produced by Kingwood from its lease of the same size. The fact that Kingwood must produce its oil from two wells, while Cleary produces from only one, is not, under the circumstances in this case, of controlling consideration. These pertinent circumstances will be detailed hereinafter. It may be observed at this point that all of the arguments advanced by Kingwood are based, directly or by inference, upon the proposition that under Oklahoma statutes as construed by this court, allowables established by the Commission must be exclusively on a "per well" basis, with no other factors considered. As will be seen hereinafter, this is not necessarily true. The two cases cited by Kingwood under its first proposition, In the Matter of the Application of Peppers Refining Co., Okl., 272 P. 2d 416, do not support the argument that Kingwood's correlative rights have been violated.

Kingwood's second proposition is that the Commission order violates Oklahoma statutes which authorize the Commission to so regulate the taking of oil from a common source of supply as to prevent the "inequitable or unfair taking" of oil from the common source of supply. As is evident, this argument is based upon the assumption that the order under review would authorize an inequitable or unfair taking by Cleary. This assumption is in turn based upon the assumption that our statutes require proration of oil to be solely on a "per well" basis among the wells producing from a common source of supply, without regard to the number of wells being operated by any given producer, or any other factor. In support of this argument, Kingwood cites 52 O.S.1961, § 274, and Wilcox Oil and Gas Co. v. State, 162 Okl. 89, 19 P.2d 347, 86 A.L.R. 421. The statute cited is a portion of a 1915 act prohibiting wasteful production of oil or petroleum and providing for proration of market demand among wells producing from any common source of

supply. The Wilcox case, decided in February, 1933, construed the 1915 act, which had no well-spacing provisions, and did not limit the number of wells that might be drilled. It may be conceded that under the 1915 act and the Wilcox case, allowable production was of necessity on a "per well" basis. However, two months later our legislature enacted the first well-spacing act which, as subsequently amended, now appears as 52 O.S.1961, § 87.1 et seq. Various sections of the well-spacing act plainly authorize the Commission to consider many factors in establishing a well spacing or drilling unit. See 52 O.S.1961, Sec. 87.1 (b). Sec. 87.1(b) of the well spacing act also provides, among other things, that the order establishing spacing or drilling units shall prescribe the location of the well for each spacing unit. It further gives the Commission authority to make exceptions as to the well location (that is, to authorize the drilling of the well at some location on the spacing unit other than the one specified in the applicable well spacing order). The last sentence of Sec. 87.1(b) provides that "Whenever such an exception is granted, the Commission shall adjust the *allowable production* for said spacing unit and take such other action as may be necessary to protect the rights of interested parties". (Emphasis supplied.)

In the case of Cleary's Penner No. 1.well, the above procedure was·followed. When it was drilled, the SE¼ of Sec. 8 was not subject to any well spacing order. In such case, Rule 303.1(B) of the general rules and regulations for the drilling of oil and gas wells (the Commission's Order No. 44297) provides that basic allowables shall be assigned on a ten-acre basis. See Fifty Fourth Annual Report of the Corporation Commission (1961), page 355. For this reason, Cleary's Penner No. 1 well was drilled on a "10-acre" location (center of SE¼ of SE¼ of Sec. 8). Thereafter, the general well spacing order (No. 44059), calling for 80 acre drilling and spacing units, under which the Kingwood wells were operated, was extended by order of the Commission to cover Cleary's Penner No. 1 in the SE¼ of Sec. 8. The extended order called for well locations in the center of a designated 40-acre square in each 80-acre unit. Since the Penner well had already been drilled and was not in the center of the designated 40-acre square, an exception was granted for the Penner well, and it was designated as the "permitted" well for the 80 acre drilling and spacing unit in which it was located.

The exception for the Penner well was in accordance with a general practice of the Commission which Kingwood does not question. It would obviously have been inequitable and unjust to require Cleary to abandon its producing well and drill another one in a different location.

Since Cleary's Penner No. 1 was an "excepted" well as outlined above, the Commission was authorized by the last sentence of Sec. 87.1(b), quoted above, to "adjust the allowable production" for the spacing unit in which it is located.

Kingwood's third proposition is that the order is not in accord with Rules 303.1(B) and 303.1(C) of the general rules and regulations of the Corporation Commission for the drilling of oil and gas wells (Order No. 44297). Rule 303.1(B) sets out a table of allowables for oil wells based on depth and the size of the drilling and spacing unit; Rule 303.1(C) provides that allowables in allocated pools shall be on an individual well basis, and that the allowable for. each well shall be produced from that well and that no part thereof shall be produced from any other well. Kingwood argues that the order here concerned in effect creates an allowable for an undrilled well, and then assigns the allowable for that well (or at least 80% of it) to Cleary's Penner No. 1 well.

This argument would be persuasive if our statutes required the proration of oil to be on a "per well" basis with no other factors considered, but as we have seen, this is not the case. The Commission's statutory authority to "adjust the allowable production" for a spacing unit is clear. We find similar provision in the Commission's own rules.

Rule 101 of Order No. 44297 (the general rules and regulations for the drilling of oil and gas wells, and production therefrom) provides as follows:

"All rules and regulations of general nature herein promulgated to prevent waste, assure the greatest ultimate recovery * * * and protect the correlative rights of all interests, shall be effective throughout the State of Oklahoma, and be in force * * * *except as amended, modified, altered or enlarged* * * * by the Commission." (Emphasis supplied.)

Also, in the paragraph of Rule 303.1(B) immediately preceding the table of allowables above referred to, we find the following language:

"* * * Each well in such pool shall be assigned an allowable equal to the applicable top per-well allowable from Table A below * * * subject to any * * * special field rules or orders of the Commission * * *."

The order under review does not violate Rule 303.1(C). It establishes an allowable for Cleary's Penner No. 1, and for no other well. It does not permit the production of any portion of the allowable for Penner No. 1 from any other well.

██ Kingwood's fourth proposition is that the order is not supported by substantial evidence, and in this connection Kingwood says that there is "no concrete evidence" in the record justifying the granting of 180% of normal allowable for Penner No. 1. The argument under this proposition consists essentially of an attack upon the credibility of Cleary's expert witness, Mr. B, who estimated the gross ultimate reserves under the SE¼ of Sec. 8 as 28,000 barrels, and recommended an allowable of 180% for Penner No. 1. Kingwood's expert witness estimated the reserves at a much larger figure. This disagreement among the experts did no more than create a conflict in the evidence which was resolved by the Commission in Cleary's favor.

It is well settled that an order of the Corporation Commission on appeal to the Supreme Court will be affirmed if sustained by the law and substantial evidence. Application of R. Olsen Oil Co., 205 Okl. 500, 239 P.2d 417. We hold that the testimony of Mr. B amounted to substantial evidence in support of the finding of the Commission that "the expected recovery * * * from the Penner No. 1 Well * * * is not sufficient to justify the drilling of a second well * * *." Kingwood does not question the sufficiency of the evidence in any other particular.

██ The last proposition is that the order deprives Kingwood of its property without due process of law, in contravention of the requirements of federal and state constitutions. The only authority cited is Stevens v. State Corporation Commission, 185 Kansas 190, 341 P.2d 1021. That case is of no assistance here because, as noted by the Kansas court at page 1026 of 341 P.2d, "The constitution of the state of Oklahoma differs quite radically in its provisions from our own state constitution." Due process is not mentioned in that case.

The phrase "due process of law" has a well defined meaning. See Kiespert v. Jenkins, Okl., 324 P.2d 283, wherein this court held:

"By due process of law is meant an orderly proceeding adapted to the nature of the case, before a tribunal having jurisdiction, which proceeds upon notice, with an opportunity to be heard, with full power to grant relief."

The briefs before us do not reveal any essential element of due process which is lacking in this case. Kingwood had its "day in court".

The order of the Corporation Commission is affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and DAVISON, JOHNSON, WILLIAMS, IRWIN and BERRY, JJ., concur.