**BRUMARK CORPORATION, Appellant,**

**v.**

**The CORPORATION COMMISSION OF the STATE OF OKLAHOMA, Santa Fe Minerals, a division of Santa Fe International Corporation, Santa Fe Minerals, Inc., Vintage Petroleum, Inc., Meridian Oil Production, Inc., Kaiser–Francis Oil Company, Samson Resources Company/Dyco Petroleum Corporation, Cross Timbers Oil Co., and Sanguine Ltd., Appellees.**

**No. 86354.**

Court of Appeals of Oklahoma,
Division No. 1.

July 16, 1996.

Karl F. Hirsch, Patricia G. Parrish, Oklahoma City, for Appellant.

Michael D. Stack, Oklahoma City, for Appellee Santa Fe Minerals, Inc.

John R. Reeves, Jack C. Moore, Oklahoma City, for Appellee Vintage Petroleum, Inc.

## OPINION

HANSEN, Presiding Judge:

Appellant, Brumark Corporation ("Brumark"), seeks review of Order No. 395331 of the Oklahoma Corporation Commission ("the Commission"). This Order is the culmination of hearings before the Commission in Causes numbered CD–900154020 ("154020"), 900154084 ("154084"), and 940000948 ("948"). Causes 154020 (Brumark's Application) and 154084 (Santa Fe's First Application) were the subject of a prior order of the Commission, Order No. 359695, which was appealed by Brumark in *Brumark Corporation v. Corporation Commission,* 864 P.2d 1287 (Okla. App.1993) (*"Brumark I"*). The controversy in that appeal and here, surrounds the overproduction of 3.011 BCF of gas from the "Music No 2–23 Well" ("# 2–23 Well") which is located in Beckham County, Oklahoma. The facts which led to that appeal are succinctly set forth in *Brumark I* and need not be repeated here. In *Brumark I,* the Court of Appeals reversed Order 359695 and remanded the cause to the Commission.

After remand, Appellee Santa Fe Minerals, Inc. ("Santa Fe") filed a second application in Cause 948 seeking to establish appropriate production levels, production rates or allowables for the Music # 1–23 well and the # 2–23 Well pursuant to 52 O.S. § 29(D) and Commission rules. The three causes were combined for hearing before the Administrative Law Judge, who recommended Santa Fe's application in Cause 948 be granted. The Appellate Administrative Law Judge concluded the ALJ's recommendation should be affirmed. After a hearing before the Commission en banc, the Commission issued Order 395331 which effectively denied Brumark's application to shut-in the # 2–23 Well and granted Santa Fe's second application for a separate allowable for the # 2–23 Well of 49.86 MMCF per day from the Atoka C and D common sources of supply, effective March 1, 1994 for a period of 67 days.

On appeal, Brumark argues: 1) the Commission failed on remand to follow the mandate issued by the Oklahoma Supreme Court in *Brumark I,* 2) Santa Fe's requested relief in Cause 948 is barred by the doctrines of res judicata and settled-law-of-the-case and by

collateral estoppel, 3) the Commission did not have the authority to grant the relief contained in Order 395331, 4) the Commission erred in finding Appellees had correlative rights to protect and the Commission's findings are not supported by substantial evidence and 5) the Commission erred in failing to reconsider certain evidence.

■ Brumark contends the Commission was required on remand, by the Supreme Court's mandate in *Brumark I*, to deny in toto, Santa Fe's First Application and to grant Brumark's Application (to shut-in the # 2–23 Well). Brumark states the Court of Appeals remanded *Brumark I* back to the Commission so that the Commission could enter judgment in favor of Brumark and order the well shut-in. In *Brumark I*, the Court concluded:

> Although a commingling order may be granted retroactively, it may not be dated prior to the date of the first application. *Roberts v. Funk Exploration*, 764 P.2d 147 (Okl.1988); *Mullins v. Ward*, 712 P.2d 55 (Okl.1985). Santa Fe, however, was allowed to commingle production from the Atoka C and D common sources of supply from the date of first production, and prior to its application for commingling.
>
> The Corporation Commission exceeded its authority by waiving a non-procedural rule and granting a retroactive commingling order in violation of an established rule of the Corporation Commission.
>
> REVERSED AND REMANDED.

The mandate issued by the Supreme Court of Oklahoma on December 3, 1993, in *Brumark I*, provides in part:

> WHEREAS, THE SUPREME COURT OF THE STATE OF OKLAHOMA, DID ON THE 01ST DAY OF JUNE, 1993 RENDER A MEMORANDUM OPINION IN THE ABOVE ENTITLED CAUSE, APPEALED FROM THE CORPORATION COMMISSION OF THE STATE OF OKLAHOMA.
>
> REVERSED AND REMANDED
>
> NOW, THEREFORE, YOU ARE HEREBY COMMANDED TO CAUSE SUCH REVERSAL TO SHOW OF RECORD IN YOUR COURT AND TO ISSUE SUCH PROCESS AND TAKE SUCH OTHER AND FURTHER ACTION AS MAY BE IN ACCORD WITH RIGHT AND JUSTICE AND SAID OPINION.

In Order 395331, the Commission found:

> The Commission in reviewing the Court of Appeal's decision finds that the Court only decided the issue concerning the Commission's lack of authority to waive a non-procedural rule. The Commission after hearing the evidence and testimony as presented finds that it has the authority to adjust the allowable for the Music # 2–23 well for the period of time after April 30, 1990. Cause CD No. 940000948 was brought under the authority granted the Commission in Title 52 O.S. 29D, and under the Corporation Commission Rules 165: 10–13–9 and 165: 10–17–11. Under the above described statute and rules, the Commission clearly has the authority to adjust the allowable for the Music # 2–23 well for the period of time on or after April 30, 1990, being the date of the entry of the order authorizing such well to produce on a commingled basis. Cause CD Nos. 900154020 and 900154084 and the decision of the Court of Appeals in Case No. 78,379 dealt with the allowable for the Music # 2–23 well for the period of time prior to April 30, 1990. The application in Cause CD No. 940000948 is not barred by the prior actions brought in Cause CD Nos. 900154020 and 900154084 and by the decision of the Court of Appeals in Cause No. 78,379, aforementioned, under the doctrines of law-of-the-case, res judicata, estoppel, claim preclusion and issue preclusion.

In *Brumark I*, Brumark appealed Order 359695 which granted Santa Fe's first application and denied Brumark's application. *According to the Court of Appeals' opinion*, Brumark appealed a) the Commission's finding that Santa Fe did not knowingly, recklessly or inadvertently violate the Commission rules, maintaining such finding was not supported by substantial evidence and b) the Commission's authority in granting Santa Fe a retroactive allowable back to the date of first production. *Brumark I*, at 1288. The Court of Appeals *did not*, in *Brumark I*,

address Brumark's challenge to the evidence but decided the appeal on the single issue of whether the Commission exceeded its authority in granting the retroactive allowable. The Court of Appeals determined *only* that the Commission had exceeded its authority by waiving a non-procedural rule and granting a retroactive commingling order. The Court did not address any issues surrounding Brumark's denied application to shut-in the well. Nor did it address the challenge to the evidence raised by Brumark. The Court did not reverse and remand the matter with directions that the Commission enter judgment in favor of Brumark.

■ When a cause is reversed and remanded by the Supreme Court and the mandate is received and entered of record by the trial court, the trial court is vested with jurisdiction to make any order or enter any judgment in the further progress of the cause not inconsistent with the decision of the Supreme Court, and in making such orders, the trial court has jurisdiction to interpret the decision and mandate of the Supreme Court. *Berland's Inc. of Tulsa v. Northside Village Shopping Center, Inc.,* 447 P.2d 768 (Okla.1968). This Court may similarly construe the mandate issued in connection with its opinion. *Harris v. Chambers,* 121 Okla. 75, 247 P. 695 (1926). In construing the mandate, this Court must carefully consider the opinion on which it is based. *Berland's,* at 696. Unless specifically limited by the proceedings in error or as to issues which become the settled-law-of-the-case, when a cause is remanded, the parties are entitled to introduce additional evidence, supplement the pleadings, and expand the issues. *Parker v. Elam,* 829 P.2d 677, 682 (Okla.1992); *Robert L. Wheeler, Inc. v. Scott,* 818 P.2d 475, 479 (Okla.1991); *Fent v. Oklahoma Natural Gas Company, a Division of Oneok Inc.,* 898 P.2d 126, 134 (Okla.1994).

We have examined the mandate and the opinion on which it is based and hold the Commission has not misconstrued it. Upon remand, the Commission was *not required* to enter judgment in favor of Brumark on Cause 154020 and was not prevented from conducting further proceedings in Causes 154020 and 154084. The actions of the Commission were "not inconsistent with" this Court's opinion and the mandate in *Brumark I.* Accordingly, Brumark's first proposition of error is denied.

■ Next, Brumark argues Order 395331 should be reversed because Santa Fe's second application is barred by res judicata, issue preclusion and the settled-law-of-the-case doctrine.

Under the doctrine of res judicata ("claim preclusion"), a final judgment on the merits of an action bars the parties from relitigating not only the adjudicated claim but also any theories or issues that were actually decided or could have been decided in that action. *Wilson v. Kane,* 852 P.2d 717, 722 (Okla.1993). Under collateral estoppel ("issue preclusion"), once a court has decided an issue of fact or law necessary to its judgment, that issue may not be relitigated between the same parties or their privies in a future suit on a different cause of action. *Benham v. Plotner,* 795 P.2d 510, 512 (Okla.1990). The "settled-law-of-the-case" doctrine bars relitigation of only those issues which were *actually settled* by a prior appellate opinion. *Willis v. Nowata Land and Cattle Company, Inc.,* 789 P.2d 1282 (Okla.1989). *In the Matter of Estate of Ringwald,* 905 P.2d 833, 835 (Okla.App.1995). See also *Fent v. Oklahoma Natural Gas Company, a Division of Oneok Inc.,* 898 P.2d 126 (Okla.1994).

■ Both res judicata and issue preclusion require a *final judgment* before they may be applied. *Panama Processes, S.A. v. Cities Service Company,* 796 P.2d 276, 283 (Okla.1990); *Benham v. Plotner,* 795 P.2d 510, 512 (Okla.1990). Order 359695 was appealed by Brumark to the Court of Appeals, which reversed and remanded such order. There has been no final judgment on the merits of Causes 154020 (Brumark's application) and 154084 (Santa Fe's first application). "A judgment that is reversed on appeal—and the cause remanded—loses its conclusive character and cannot stand as a bar to further suit on the same cause of action." *Mobbs v. City of Lehigh,* 655 P.2d 547, n. 5 (Okla.1982). Thus, Order 359695, reversed by the Court of Appeals, cannot serve as a basis for the application of res

judicata or issue preclusion regarding Santa Fe's second application in Cause 948.

The only final decision in Causes 154020 and 154084 thus far is the Court of Appeals' decision in *Brumark I*. The preclusive effect of this decision on the proceedings on remand, is determined by the settled-law-of-the-case doctrine. This doctrine operates to bar relitigation *in the same case* of issues once decided by an appellate opinion. *Fent,* 898 P.2d at 133. As noted, only those issues which were *actually settled* by a prior appellate opinion are barred. *In the Matter of Estate of Ringwald,* 905 P.2d at 835. In *Brumark I,* the Court held the Commission exceeded its authority by waiving a non-procedural rule and by granting a retroactive commingling order in violation of an established rule of the Commission. In the hearings on remand, Santa Fe was not permitted to and did not relitigate the issue of whether the Commission may waive a non-procedural rule and grant a retroactive commingling order. The issues considered included whether the Music # 2–23 well should be shut-in per Brumark's application and whether Santa Fe's request for a separate allowable in its second application should be granted. The opinion by the Court of Appeals in *Brumark I* did not expressly or by implication decide the issue of whether the # 2–23 Well should be shut-in as requested in Brumark's application or whether a separate allowable for the well should be granted. Accordingly, the settled-law-of-the-case doctrine did not prevent the Commission from granting the relief provided by Order 395331.

Brumark next contends the Commission did not have the authority to grant the relief requested and that the Order violates the Commission's substantive rules. In support, Brumark cites that part of *Brumark I* which provides:

> In this case, we are not dealing with a rule of procedure, but a rule affecting the correlative rights of the parties. The Corporation Commission is empowered to issue orders to protect the correlative rights of interest owners in common sources of supply. [footnote citing 52 O.S.Supp. 1001, § 87.1(a) ]. OCC/OGR § 3–224(A)(a) and (E)(3)(a)(B) provides that a commingling order *shall* be acquired prior to commingling, and an allowable shall be assigned only after issuance of the commingling order. This rule has the force and effect of law and an agent of the Commission is powerless to waive the requirement of the rule. *Ashland Oil, Inc. v. Corporation Commission,* 595 P.2d 423 (Okla.1979).

Apparently Brumark's contention is that Order 395331, which was entered pursuant to 52 O.S.Supp.1992, § 29(D) and OCC Rules 165:10–13–9 and 165:10–17–11, somehow violates the Commission rules which require that a commingling order be acquired prior to commingling and that an allowable shall only be assigned after issuance of the commingling order. We note Brumark does not cite any more authority than the *Brumark I* language above-quoted and did not quote the rules which the Order allegedly violates.[1]

Appellees do not dispute that Santa Fe did not obtain a commingling order prior to commingling the Atoka C and the Atoka D in the # 2–23 Well. As noted in *Brumark I,* Order No. 346794, which commingled the Atoka C and D in the # 2–23 Well, was issued on April 30, 1990. Order 395331, which granted the separate allowable for the # 2–23 Well, was entered on September 11, 1995, five years after the order which commingled the

---

1. Appellees quote OAC § 165:10–17–11(g)(1) and (2) in their brief as:

(G) Minimum compliance (9–2–92)

(1) The Conservation Division shall monitor well production at least annually. It shall issue annual production schedules which show balancing for unallocated gas wells in accordance with 165:10–17–16 [Rule 2–332]. The allowable for a well shall be based on the product of the number of days in the proration period multiplied by the applicable allowable formula, provided that said product shall be reduced for overproduction as provided by this Section or by any penalty or limitation on production imposed by applicable Commission order.

(2) Any overproduction existing at the end of the calendar year shall be applied against the allowable for the next calendar year. Furthermore, the overproduced well shall be required to make up overproduction within the first six (6) months of the next calendar year. If the overproduction is not made up within that time period, the flow rate shall not exceed ten percent of the then current allowable until the overproduction is made up.

Atoka C and Atoka D. Thus, there is no violation of the rule cited by Brumark, that an allowable shall be assigned only after issuance of the commingling order.

In *Brumark I,* the Court of Appeals noted: "Although a commingling order may be granted retroactively, it may not be dated prior to the date of the first application." Order 395331, dated September 11, 1995, sets the allowable of 49.86 MMCF per day from the Atoka C and D common sources of supply and provides the allowable is effective *as of March 1, 1994,* for a period of 67 days.[2] Santa Fe's second application was filed March 1, 1994. Thus, the allowable set by Order 395331 is not dated prior to the date of the application. Effective April 1, 1992, the Legislature amended 52 O.S.Supp.1992, § 29. Subsection D of § 29 provides:

> D. The Corporation Commission may, for good cause shown under the exigencies of a particular case and after appropriate notice and hearing, establish a production level different from the levels provided by this section or established by rule promulgated by the Corporation Commission.

This statute grants the Commission the authority to assign production levels on a case by case basis different from the levels provided by statute or rule. Brumark has failed to demonstrate the Commission lacked authority to enter Order 395331. This assignment of error is denied.

 On appeal from an order of the Corporation Commission, our review is limited to determining whether the findings of fact and conclusions of law are sustained by the law and substantial evidence. *Samson Resources Company v. Oklahoma Corporation Commission,* 742 P.2d 1114 (Okla.1987). This review does not require us to weigh the evidence but to determine only whether the supporting evidence possesses substance and relevance. *Id.* at 1116. Brumark maintains there is no substantial evidence to support the Commission's finding that Appellees had "correlative rights in the overproduced gas"

and that the evidence requires the Commission to shut-in the # 2–23 Well.

Order 395331 provides in part:

> * * * Under the authority granted under Title 52, O.S. 29 D, as implemented by Corporation Commission Rules 165:10–13–9 and 165:10–17–11 and based on the evidence and testimony presented in these causes, the separate allowable as requested by Santa Fe, for the Music # 2–23 well should be granted in order to prevent waste and protect correlative rights.
>
> *It was stipulated in the prior hearing in Cause CD No. 900154020 and 900154084 that if the Music # 2–23 well was shut in that a portion of the hydrocarbons that it would otherwise recover would be recovered by the offsetting wells.* The evidence presented at the subsequent hearings in these causes confirmed this stipulated fact. It was further shown that the Atoka "C" and "D" common sources of supply are very competitive reservoirs and that if the Music # 2–23 well is shut in it would take approximately two and one-half years to make up the amount of overproduction of 3.011 B.F.. *Shutting in the Music # 2–23 well for this period of time would place the well and the applicable unit, at a competitive disadvantage by allowing the offsetting wells to drain reserves from Section 23. The shutting in of the Music # 2–23 well would result in uncompensated drainage to Section 23. From the evidence presented it is clear that the correlative rights of the working interest owners and the mineral owners in Section 23 would be violated if the Music # 2–23 well were shut in, resulting in uncompensated drainage.*

The Commission finds that Santa Fe's failure to file for a commingling application was due to inadvertence only and not knowingly or in reckless disregard of the rules.

---

**2.** Thereafter, the allowable shall be the normally assigned allowable for unallocated gas wells. The Order further provides that upon being granted the allowable, the # 2–23 Well will only be allowed to produce 10 per cent of the 49.86 MMCFPD, as provided by Corporation Commis-

sion Rule 165:10–17–11(g)(2), so as to make up the existing overproduction. This would result in the # 2–23 Well producing at a rate which would not exceed the allowable that would otherwise have been assigned to the well under Commission Rules.

The evidence presented failed to establish any flagrant violation of the letter and spirit of the rules of the Commission as asserted by Brumark.

Brumark withdrew its protest to the commingling application for the Music # 2–23 well and allowed the commingling order to be entered without objection. While the Commission recognizes that Santa Fe's failure to timely obtain a commingling order for the Music # 2–23 well resulted in overproduction of 3.011 BCF, the production from the well for the period in question as not in excess of the allowable that would have been assigned to such well had all the paperwork been filed in a timely manner.

In *Kingwood Oil Company v. Corporation Commission,* 396 P.2d 1008 (Okla.1964), "correlative rights" was defined as a term which indicates that each owner of land in a common source of supply of oil and gas has legal privileges as against other owners of land therein to take oil and gas therefrom by lawful operations conducted on his own land, limited, however, by duties to other owners not to injure the source of supply and not to take an undue share of oil and gas. The definition of correlative rights was "refined" in *Seal v. Corporation Commission,* 725 P.2d 278, 287 (Okla.1986) to be "those rights which one owner possesses in a common source of supply in relation to those rights possessed by other owners in the same common source of supply which is the underlying geological strata from which the oil and gas is produced, rather than the well through which the oil and gas is reduced to possession." According to *Seal,* this definition does not mean that correlative rights never exist among owners of a single well.

The Music # 1–23 Well, in which Brumark owns an interest, is completed in the Atoka D common source of supply in Section 23, T10N, R21W, Beckham County, Oklahoma. The Music # 2–23 Well is completed in the Atoka C and D common sources of supply. Brumark asserts correctly that it has correlative rights in the Atoka D common source of supply. It argues Appellees have no correla-

tive rights because they overproduced the # 2–23 Well before Santa Fe had a commingling order. Brumark argues that its correlative rights have been injured by the "unauthorized commingling" and overproduction in the # 2–23 Well.

First, we note *Brumark* withdrew its protest to the commingling application for the # 2–23 Well and allowed the commingling order to be entered without objection. Second, the parties *stipulated* that if the # 2–23 Well was shut-in, a portion of the hydrocarbons that it would otherwise recover would be recovered by offsetting wells. This means, as the Commission found, that the correlative rights of the working interest and mineral owners *in Section 23,* including the owners in the # 2–23 well and the # 1–23 well, would be violated due to uncompensated drainage. Third, the Commission found that although Santa Fe's failure to timely obtain a commingling order resulted in the 3.011 BCF overproduction, the production for the # 2–23 Well for the period in question was not in excess of the allowable that would have been assigned to such well had all the paperwork been filed in a timely manner. Brumark admits the owners in the # 2–23 well have a right to produce from the reservoir but then states Appellees have no correlative rights in the common source of supply which should be protected because they overproduced the # 2–23 well prior to obtaining a commingling order. Brumark has failed to demonstrate with authority that the correlative rights of an interest owner in a common source of supply cease to exist when a well becomes overproduced. We find no error in the Commission's finding that Appellees have correlative rights in the common source of supply.

■■ The substance of Brumark's challenge to the evidence is directed to the Commission's refusal to shut-in the # 2–23 Well.[3] Basically, Brumark maintains that even though the parties stipulated gas would be lost if the # 2–23 Well was shut-in, the Commission should have shut-in the well to protect the owners in the # 1–23 well. Brumark wants the well shut-in until the owners of the # 1–23 well have produced an amount which it argues it could have produced during the

3. Brumark does not argue there is no substantial evidence to support the Commission's grant of a separate allowable.

time the # 2–23 Well was producing prior to obtaining a commingling order. In Brumark's words, the question was not *whether* the # 2–23 well would lose production from being a shut-in but whether the owners in the # 2–23 well *should* suffer lost production in order that owners in the # 1–23 well could capture more of the gas from the Atoka D formation.

The evidence shows the Upper Atoka D is a competitive reservoir and the # 1–23 well and the # 2–23 Well are competing, to some extent, for the same gas. Brumark's geologist testified the shut-in requested by Brumark would apply to both the Atoka C and D common sources of supply. Brumark states the parties agreed that both wells had a right to produce from that reservoir and to compete for that gas on a fair and equitable basis. Both parties presented extensive testimony and other evidence which detailed the geological formations in issue, the amounts of production from the wells in Section 23 and in the offsetting wells, and calculations concerning how much production the # 1–23 Well "lost" to the # 2–23 Well. Brumark presented evidence based on certain assumptions, to support its contention the # 1–23 Well lost 1.8 BCF of gas from the Atoka D to the # 2–23 Well due to commingled production prior to obtaining the commingling order.[4] Appellees presented evidence to support their contention the majority of production from the # 2–23 Well is from the Atoka C formation and that the # 1–23 Well did not "lose" the amount of gas from the Atoka D estimated by Brumark. Although Brumark presented evidence that the # 1–23 Well may have suffered a competitive disadvantage due to the commingling of the # 2–23 Well, we again note that although Brumark initially protested Santa Fe's application for a commingling order, it withdrew the protest. Further, it was stipulated, and the evidence confirms, that the correlative rights of the working interest owners and the mineral owners in Section 23 would be violated if the Music # 2–23 Well were shut in for 2½ years. Finally, the Commission's Order provides that while Santa Fe's failure to timely obtain a commingling order for the # 2–23

Well resulted in an overproduction of 3.011 BCF, "the production from the well for the period in question was not in excess of the allowable that would have been assigned to such well had all the paperwork been filed in a timely manner." Brumark has presented no argument that this finding is error. Thus, it appears Brumark, who withdrew its initial protest to the commingling order, was not adversely affected by Santa Fe's failure to timely obtain a commingling order for the # 2–23 Well. Upon review of the record, we conclude there is substantial evidence to support the Commission's Order.

Finally, Brumark contends the Commission erred by not "reconsidering" the evidence regarding whether Santa Fe's failure to obtain a commingling order prior to production was due to a reckless disregard of Commission rules. Evidence was presented on this issue at the original hearing on Causes 900154020 and 900154084 and this was one of the issues Brumark appealed in *Brumark I.* As earlier discussed, the Court of Appeals reversed and remanded these causes, never addressing this issue on appeal. At the June 22, 1994, hearing on all three consolidated applications, the ALJ informed the parties he would not be taking *any more evidence* on this issue. Brumark's counsel agreed that no more evidence need be presented on this issue but simply stated this issue was one of the issues which needed to be decided at the hearing by the Commission. Order 395331 specifically provides that Santa Fe's failure to file for a commingling application was due to inadvertence only and was not done knowingly or in reckless disregard of the rules. Brumark has failed to demonstrate the Commission committed error by failing to consider the evidence on this issue.

The Order No. 395331 of the Corporation Commission is SUSTAINED.

JOPLIN and BUETTNER, JJ., concur.

---

**4.** Part of Brumark's calculations included an estimate of what the allowable for the # 2–23 Well in the Upper Atoka D *would have been* had the separate zones of the well been tested and how much of the gas production from the # 2–23 Well was attributed to the Atoka C formation.