REYNOLDS v. STATE
2022 OK CR 14
Case Number: F-2019-696
Decided: 08/04/2022
FRANK REYNOLDS, Appellant v. THE STATE OF OKLAHOMA, Appellee

Cite as: 2022 OK CR 14, __ __

 

O P I N I O N
ROWLAND, PRESIDING JUDGE:
¶1 Appellant Frank Reynolds appeals his Judgment and Sentence from the District Court of Oklahoma County, Case No. CF-2018-1845, for Murder in the First Degree, in violation of . The Honorable Natalie Mai, District Judge, presided over Reynolds's jury trial and sentenced him, in accordance with the jury's verdict, to life imprisonment without the possibility of parole. Reynolds raises six issues on appeal:
(1) whether the compelled disclosure of his home surveillance system password violated his Fifth Amendment right against self-incrimination;
(2) whether the district court erred by denying his motion to dismiss based upon Oklahoma's Stand Your Ground law;
(3) whether the district court abused its discretion in denying his request for an instruction on the Stand Your Ground defense;
(4) whether he was denied the right to present a defense by the denial of a jury instruction on the Stand Your Ground defense;
(5) whether the evidence was sufficient for conviction; and 
(6) whether an accumulation of error deprived him of a fair trial.
¶2 We find relief is not required and affirm the Judgment and Sentence of the district court.
Facts
¶3 Reynolds fatally shot his daughter's boyfriend, Joseph Michael Groh, in Reynolds's Del City home on April 21, 2018. Reynolds claimed the shooting was justified under a Stand Your Ground/self-defense theory. The incident was captured on Reynolds's digital video recorder (DVR) home surveillance system. Police discovered the existence of the surveillance system early on in the investigation and believed the system was recording during the shooting. Detectives asked Reynolds for the password, but he refused to disclose it and asked to speak with his attorney. Later, an investigator obtained a warrant to seize and search the device. The investigations commander presented the search warrant to Reynolds and told him the warrant required him to give police the password. Based upon the commander's representations, Reynolds disclosed the password. Police obtained the video footage of the shooting and it was played for the jury during the prosecution's case over Reynolds's objection. Although it appeared the two had been bickering before the fatal shooting and witnesses testified that Reynolds had asked Groh to leave several times throughout the day, the footage showed that Groh did not make any physically threatening movements toward Reynolds immediately before the shooting.
1. The Compelled Disclosure of the Password
¶4 We must decide, as a matter of first impression, whether Reynolds's compelled disclosure of the password to his password-protected DVR home surveillance system violated the Self-Incrimination Clause of the Fifth Amendment to the United States Constitution or the corresponding provision against self-incrimination in the Oklahoma Constitution. Reynolds moved to suppress his security system's video footage of the day's events and the fatal shooting incident based upon various violations of his constitutional rights, including his Fifth Amendment privilege against self-incrimination. The district court denied Reynolds's suppression motion relying upon the "foregone conclusion" doctrine. It concluded Reynolds's disclosure of the DVR password was "most likely testimonial in nature" within the context of the Fifth Amendment, but that the foregone conclusion doctrine applied because the prosecution had sufficiently shown the requirements of the doctrine, namely: (1) that the police knew about the DVR system's existence prior to the password's disclosure; (2) that Reynolds had sole possession and control of the system; and (3) that the evidence was authentic. For reasons discussed below, we hold that the compelled disclosure in this case did not violate Reynolds's constitutional rights based upon the Fifth Amendment's foregone conclusion doctrine. Accordingly, we find that the district court did not abuse its discretion in denying Reynolds's motion to suppress and admitting the video at trial. See Bramlett v. State, , ¶ 10, , 793 (reviewing rulings on motions to suppress for an abuse of discretion).
¶5 The Fifth Amendment privilege against self-incrimination is limited to compelled communications that are both testimonial and incriminating. Fisher v. United States, 425 U.S. 391, 408 (1976). The privilege does not shield a person from the "compelled production of every sort of incriminating evidence." Fisher, 425 U.S. at 408. See also Billy v. State, , ¶ 8, , 239 (observing Fifth Amendment applies to testimonial evidence not physical evidence). It may, however, apply to the forced disclosure of documents or an item when the very act of production testifies to the existence, possession, or authenticity of the record or item produced. See Schmerber v. California, 384 U.S. 757, 761 (1966) (stating "the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature . . . ."). In other words, when the very act of disclosing or turning over the evidence to authorities shows guilty knowledge or links the defendant with the incriminating evidence in a way the authorities did not already have, this act of production will be protected by the privilege even when the contents of the document or evidence may not be protected by the Fifth Amendment.
¶6 Conversely, even acts of production which are potentially testimonial may not be privileged when the existence of the information sought to be produced is a "foregone conclusion." In Fisher, the Supreme Court found that compelling a taxpayer to turn over records created by his accountant did not implicate the Fifth Amendment because the existence and ownership of the records was a foregone conclusion. "The existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers." Fisher, 425 U.S. at 411. "The question is not of testimony but of surrender." Id. (quoting In re Harris, 221 U.S. 274, 279 (1911)).
¶7 Various courts have applied this foregone conclusion doctrine in recent years in cases where criminal defendants are forced to disclose the password to a computer or other digital device. See, e.g., State v. Andrews, 234 A.3d 1254 (N.J. 2020), cert. denied, 141 S.Ct. 2623 (2021). In Andrews, the New Jersey Supreme Court traced the evolution of the foregone conclusion doctrine in deciding a case involving a similar issue, namely whether a court order requiring a criminal defendant to disclose the passcodes to his passcode-protected cellular phones violated the Fifth Amendment and New Jersey's protections against self-incrimination. Id. at 1259. Noting that the United States Supreme Court had considered the application of the foregone conclusion doctrine only in the context of document production, Id. at 1269, the Andrews court canvassed cases from lower courts in other jurisdictions which had "grappled" with applying the doctrine to cases involving the compelled production of passcodes and passwords, concluding that courts had reached "divergent results." Id. The divergent results stemmed primarily from whether the particular court found that the password or code was the object of the foregone conclusion or whether the court found the actual contents or files on the device were the object of the foregone conclusion.
¶8 For example, in Eunjoo Seo v. State, 148 N.E.3d 952 (Ind. 2020), the Supreme Court of Indiana considered the application of the foregone conclusion doctrine to disclosure of a passcode on a smart phone and found it did not apply. The Court held that prosecutors must show that existence of the incriminating evidence is the act of production which must be a foregone conclusion. "Even if we assume the State has shown that Seo knows the password to her smartphone, the State has failed to demonstrate that any particular files on the device exist or that she possessed those files." Id. at 958. Other courts have taken the contrary view. See State v. Stahl, 206 So.3d 124, 136 (Fla. Dist. Ct. App. 2016) ("To know whether providing the passcode implies testimony that is a foregone conclusion, the relevant question is whether the State has established that it knows with reasonable particularity that the passcode exists, is within the accused's possession or control, and is authentic.") (emphasis in original); United States v. Hubbell, 530 U.S. 27, 40, (2000) ("The 'compelled testimony' that is relevant in this case is not to be found in the contents of the documents produced in response to the subpoena. It is, rather, the testimony inherent in the act of producing those documents.").
¶9 In this case, both parties agree that the foregone conclusion doctrine should control, but they disagree on how it should be applied. Reynolds contends that the State must show that the existence of the incriminating video footage on the device was a foregone conclusion, which is the approach taken in the Eunjoo Seo line of cases. The State counters that the question is whether the existence of a password, within the knowledge or control of Reynolds, and which is authentic, was a foregone conclusion. This is the approach taken by cases such as Stahl and Andrews. We find this the better analysis and hereby adopt it.
¶10 To require that the existence of incriminating evidence be shown as a foregone conclusion is to confuse one's protections under the Fourth Amendment with those of the Fifth Amendment. By issuing a warrant for the seizure and search of this surveillance hard drive, a magistrate had already found the existence of probable cause to believe incriminating evidence was contained thereon, and that is all the Framers sought by way of protection in criminal investigations. There is simply no right for one to construct impenetrable enclaves, whether concrete or digital, to evade a magistrate's finding of probable cause and order to seize evidence or contraband attendant to the enforcement of the law.
The Framers addressed the subject of personal privacy directly in the Fourth Amendment. They struck a balance so that when the State's reason to believe incriminating evidence will be found becomes sufficiently great, the invasion of privacy becomes justified and a warrant to search and seize will issue. They did not seek in still another Amendment the Fifth to achieve a general protection of privacy but to deal with the more specific issue of compelled self-incrimination.
Fisher, 425 U.S. at 400.
¶11 Whatever testimonial aspects the act of producing the passcode may have had are lost if the foregone conclusion doctrine applies to the existence of the passcode. See People v. Sneed, 187 N.E.3d 801, 810 (Ill. App. 4th 2021). Here, the State has established with reasonable particularity that Reynolds's DVR system was password protected thereby establishing the existence of the password, and that Reynolds was the owner and sole operator of the system thereby establishing his possession of the password and its authenticity. We hold that on these facts the foregone conclusion doctrine applies and the compelled disclosure of the password did not violate Reynolds's Fifth Amendment right. Accordingly, we find no error in the denial of Reynolds's motion to suppress or admission of the DVR footage at trial. This claim is denied.
2. Immunity from Criminal Prosecution
¶12 Reynolds claims that his murder conviction must be reversed with instructions to dismiss because he was immune from criminal prosecution under (person using defensive force against an intruder in his home is justified and immune from criminal prosecution). Reynolds asserted his claim of immunity under Section 1289.25(F) by filing a pretrial motion to dismiss. The district court denied his motion after conducting a hearing. We review the district court's ruling on Reynolds's motion to dismiss for an abuse of discretion. See Francis v. State, , ¶ 4, , 374. This Court will find an abuse of discretion only where the district court's ruling was a clearly erroneous conclusion made without proper consideration of the relevant facts and law. Francis, , ¶ 4, 474 P.3d at 374.
¶13 We explained the protection afforded by Section 1289.25 in Dawkins:
Oklahoma statutes provide that a person has the right to expect absolute safety in a place they have a right to be, and may use deadly force to repel an unlawful intruder. . A person who has a reasonable fear of imminent death or great bodily harm to himself or another may use defensive force including deadly force. The person against whom the force is used must commit an unlawful and forcible entry or act which prompts the use of deadly force. (B). A person may use deadly force with no duty to retreat when he has the lawful right to be where he is, and when he reasonably believes the use of deadly force is necessary. (D). A person whose use of force is justified according to the statute is immune from criminal prosecution and civil action. (F).
Dawkins v. State, , ¶ 6, , 217.
¶14 Reynolds argues he satisfied the requisite conditions set forth in Section 1289.25(B) and claims he fatally shot Groh as Groh was in the process of unlawfully and forcibly entering his home. Reynolds claims Groh had no legal right to remain on his property because he had previously asked Groh that day to leave his residence. According to Reynolds, he was entitled to the statutory presumption that he held a reasonable fear of imminent peril of death or great bodily harm when he employed defensive deadly force, first firing a warning shot and then the fatal shot as Groh advanced. He maintains the State presented no evidence at the hearing to rebut the statutory presumption and that none of the statutory exceptions listed in Section 1289.25(C)(1) or (2) are applicable in this case. We disagree.
¶15 Because we have not done so in a published opinion, we first set forth the proper allocation of the burden of proof and the standard of proof on a pre-trial Section 1289.25 claim of immunity. We hold, as we have in at least two unpublished decisions, that a defendant seeking pre-trial immunity from criminal prosecution pursuant to Section 1289.25(F) has the burden of proof to show, by a preponderance of the evidence, that his or her use of allegedly defensive force was legally justified. In reviewing a pre-trial claim of immunity under Section 1289.25, we consider only the record of the pre-trial hearing because a pre-trial claim of immunity has a different burden and standard of proof than a self-defense claim pursued at trial. Immunity from criminal prosecution is simply not an issue at a criminal trial on the merits. Should a defendant lose his immunity claim, the issue at trial may become, depending on the evidence, whether the defendant, acting in self-defense with consideration of the Stand Your Ground provisions, was justified in using deadly force. The trial evidence is germane for evaluating an appellate sufficiency of the evidence claim as it had no impact on the pre-trial immunity decision. Likewise, the evidence from the pre-trial immunity hearing is relevant in determining whether the district court abused its discretion in deciding the immunity claim itself. Consequently, we will not consider evidence presented at trial to bolster a pre-trial claim of immunity. See Leaf v. State, , ¶ 2, , 170 (holding appellate review of suppression ruling limited to evidence from suppression hearing and appellate court would not consider trial evidence to bolster evidence at suppression hearing).
¶16 The district court summarized the evidence at the conclusion of the immunity hearing, observing that the victim was the long-time boyfriend of Reynolds's daughter and that he had been allowed in Reynolds's home on numerous occasions. The court further observed that the relationship between the victim and Reynolds had been a turbulent one from time to time. The victim, found the court, was in Reynolds's home that day without objection as the family, including the victim, had decided to have a cookout together. The court explained that whether the victim had been asked to leave was in dispute, noting the interests of the various witnesses on the issue. The court ultimately found Reynolds failed to prove that he had a reasonable fear of imminent death or great bodily harm from the unlawful and forcible entry of his home by the victim. The court cited Reynolds's demonstrably false statements to the arresting officer that he shot Groh because Groh was holding a weapon and was running toward him. The court then noted that the video footage of the shooting showed the victim coming in the patio door when Reynolds first fired a warning shot. Seconds later, Reynolds fired the fatal shot as the victim took a step forward at the doorway. Contrary to Reynolds's claim, the court found that the video did not show any force against force; the only force observed by the court was "on the part of Mr. Reynolds." Based upon the court's review of the video footage and testimony, it found "no reason" that would justify shooting the victim in this case.
¶17 We find no abuse of discretion in the district court's denial of Reynolds's motion to dismiss because we agree that Reynolds failed to prove he shot the victim out of a reasonable fear for his safety from an unlawful and forcible entry into his residence and that his use of deadly force was not justified and authorized by Section 1289.25. The victim, a well-known visitor, was allowed to participate in a family cookout in Reynolds's home for the better part of the day. Reynolds claimed he became angry after a terse, disrespectful exchange and the victim refused to leave. The victim, however, never physically assaulted Reynolds and the two separated after the argument. Reynolds retrieved a gun from his bedroom closet, walked into the kitchen where the victim was standing in the doorway of the patio door, and shot Groh in the chest. Although Groh had been allegedly asked to leave, his entry into the kitchen from the patio was not unlawful in the required criminal sense. Nor was it forcible. Groh was simply in the doorway of the home where he had spent the majority of his day going in and out from the kitchen to the backyard grill and was not making any threatening gestures that would cause Reynolds to reasonably fear for his safety. For these reasons, we deny Reynolds's claim that the district court erred in denying his motion to dismiss and uphold the district court's ruling rejecting Reynolds's immunity claim.
3. Jury Instruction 
¶18 Reynolds claims the district court abused its discretion in denying his requested jury instruction on his Stand Your Ground defense (OUJI-CR2d 8-15A) on the basis that he was engaged in an unlawful activity. He maintains the district court lacked sufficient evidence to deny his requested instruction because at trial he recanted his statement from the Section 1289.25 hearing that he had been drinking prior to the shooting. He contends whether he was engaged in an unlawful activity, namely possessing a firearm while intoxicated, was a question of fact to be resolved by the jury under appropriate instruction. Reynolds insists the district court's denial of his requested instruction because of the unlawful activity exception was wrong.
¶19 We review a district court's decision regarding jury instructions for an abuse of discretion. Bever v. State, , ¶ 76, , 707. A theory of defense instruction is warranted only when supported by the evidence. Ball v. State, , ¶ 29, , 89. A Stand Your Ground defense instruction was not warranted because the evidence did not support a finding that Groh was an intruder who was unlawfully and forcibly entering Reynolds's home when Reynolds used deadly force and shot him. The video footage of the incident showed an unarmed Groh merely standing in the patio doorway when Reynolds opened fire. Without evidence of an unlawful, forcible entry, we find the instruction was not warranted and deny this claim.
4. Denial of Defense
¶20 Reynolds argues that the omission of a Stand Your Ground defense instruction violated his right to due process because it handicapped his defense and "kept the jury from adequately assessing the information presented [by the defense] during trial." We disagree. As stated previously, a Stand Your Ground defense instruction was not warranted. Moreover, the district court submitted instructions on self-defense which allowed the jury to evaluate the defense's claim and evidence that the shooting was justified. This claim is rejected.
5. Sufficiency of the Evidence
¶21 Reynolds argues his First Degree Murder conviction must be reversed and dismissed for insufficient evidence. He contends the prosecution failed to prove beyond a reasonable doubt that the victim's death was unlawful and that he killed Groh with malice aforethought. This claim is without merit.
¶22 Evidence is sufficient to support a conviction if, viewing the evidence and all reasonable inferences from it in the light most favorable to the State, any rational trier of fact could find the defendant guilty beyond a reasonable doubt. Mason v. State, , ¶ 13, , 1269; Spuehler v. State, , ¶ 7, , 203-04. This Court does not reweigh conflicting evidence or second-guess the fact-finding decisions of the jury; we accept all reasonable inferences and credibility choices that tend to support the verdict. Mason, , ¶ 13, 433 P.3d at 1269. We further recognize that the law makes no distinction between direct and circumstantial evidence and either, or any combination of the two, may be sufficient to support a conviction. Id. Our review of a challenge to the sufficiency of the evidence takes into account all of the evidence admitted at trial regardless of whether the evidence was properly admitted. McDaniel v. Brown, 558 U.S. 120, 130-31 (2010). We examine pieces of evidence together in context rather than in isolation, and we will affirm a conviction so long as, from the inferences reasonably drawn from the record as a whole, the jury might fairly have concluded the defendant was guilty beyond a reasonable doubt. Mason, , ¶ 13, 433 P.3d at 1269.
¶23 We find the prosecution sufficiently proved that Groh's death was unlawful and that Reynolds acted with malice aforethought. Contrary to Reynolds's claim, the evidence did not support a finding that his actions were justified, thereby making him immune from criminal prosecution by the Stand Your Ground law, because Groh's entry at the doorway was neither unlawful nor forcible. See Proposition 2, supra. That Reynolds shot Groh with malice aforethought was also sufficiently proved. Malice is the deliberate intention unlawfully to take away the life of another that is manifested by provable external circumstances. (A). Reynolds maintained from the beginning that he killed Groh to protect himself, his family, and his home from Groh's unlawful intrusion. Justification defenses like self-defense and Stand Your Ground admit the elements of the charge, but offer a legal justification for conduct that would otherwise be criminal. McHam v. State, , ¶ 10, , 667. Reynolds deliberately shot Groh with the intent to kill him, and the jury did not believe his claim that Groh was a threat. Based on the record before us, we find a rational jury could find Reynolds unlawfully killed Groh with malice aforethought. This claim is denied.
6. Cumulative Error
¶24 Reynolds claims that even if no individual error in his case merits relief, the cumulative effect of the errors committed requires either a new trial or favorable sentence modification. "The cumulative error doctrine applies when several errors occurred at the trial court level, but none alone warrants reversal." Tafolla v. State, , ¶ 45, , 1263. Although individual errors may be of insufficient gravity to warrant reversal, the combined effect of an accumulation of errors may require a new trial. Id. The commission of several trial errors does not deprive the defendant of a fair trial when the errors considered together do not affect the outcome of the proceeding. Id. There are no errors, considered individually or cumulatively, that merit relief in this case. This claim is denied.
DECISION
¶25 The Judgment and Sentence of the district court is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2022), the MANDATE is ORDERED issued upon delivery and filing of this decision.
AN APPEAL FROM THE DISTRICT COURT
OF OKLAHOMA COUNTY
THE HONORABLE NATALIE MAI, DISTRICT JUDGE

APPEARANCES AT TRIAL
DANIEL WHITE
KATIE BOURASSA
ASST. PUBLIC DEFENDERS
320 ROBERT S. KERR AVE.,
SUITE 400
OKLAHOMA CITY, OK 73102
COUNSEL FOR DEFENDANT

APPEARANCES ON APPEAL
KAITLIN MCCORSTIN
ASST. PUBLIC DEFENDER
320 ROBERT S. KERR AVE.,
SUITE 400
OKLAHOMA CITY, OK 73102
COUNSEL FOR APPELLANT

DANIEL GRIDLEY
SARAH VENTRIS
ASST. DISTRICT ATTORNEYS
320 ROBERT S. KERR AVE.,
SUITE 505
OKLAHOMA CITY, OK 73102
COUNSEL FOR STATE

MIKE HUNTER
ATTORNEY GENERAL
OF OKLAHOMA
AMY STUART-BEAVER
ASST. ATTORNEY GENERAL
313 N.E. 21ST
OKLAHOMA CITY, OK 73105
COUNSEL FOR APPELLEE

OPINION BY: ROWLAND, P.J.
HUDSON, V.P.J.: Specially Concur
LUMPKIN, J.: Specially Concur
LEWIS, J.: Specially Concur
MUSSEMAN, J.: Concur
FOOTNOTES
 Reynolds's daughter and Groh had been in a relationship for five to six years and had one child together. The couple had lived on and off again with Reynolds and his wife over the years.
 The footage had no sound.
 Because we have previously held that there is no distinction between the scope of Article II, Section 21 in the Oklahoma Constitution and the Fifth Amendment to the United States Constitution, our decision concerning the alleged constitutional violation is the same under either the federal or state constitutional provisions. See Billy v. State, , ¶ 8, , 239 (stating federal and state provision against self-incrimination afford same protection).
 We observe that Reynolds does not challenge the search warrant issued for his DVR system. He neither claims that the system was unlawfully seized nor that the search warrant authorizing the State to seize and search the system's contents was unsupported by probable cause. He admits that the probable cause affidavit requested a search warrant for the password and electronically stored information on the device but contends that the search warrant itself did not compel the disclosure of the password despite the search warrant's reference to the affidavit. He asserts that he was wrongfully informed by the police that the obtained search warrant required the disclosure of the password and thus his disclosure of the password was "compelled" within the meaning of the Fifth Amendment privilege. We accept, for purposes of our analysis, that Reynolds's disclosure of the password was compelled.
 Section 1289.25 is commonly known as the "Stand Your Ground" law.
 Bloebaum v. State, Case No. F-2014-989 (Jan. 24, 2017) (unpublished); State v. Ramos, Case Nos. S-2013-509 and S-2013-510 (June 9, 2015) (unpublished).
 In 2013, Groh broke Reynolds's nose during an altercation.
 Reynolds maintains that the district court erroneously denied his immunity claim because it found that he was engaged in unlawful activity based upon his intoxication while in possession of a gun. See Dawkins, , ¶ 7, 252 P.3d at 217 (holding defendant engaged in unlawful act at time deadly force is used is not entitled to immunity under Section 1289.25). The district court's remarks concerning whether Reynolds was engaged in an unlawful act "by drinking and having a weapon in his hand" are unclear. The evidence of Reynolds's intoxication was disputed. Because the district court clearly held that the victim was not engaged in an unlawful, forcible entry, we need not address whether Reynolds was engaged in unlawful activity in our analysis of this claim.
 Reynolds likens Groh to a trespasser, arguing Groh was not legally permitted in the home once told to leave and thus his entrance was presumed to be for an unlawful purpose. Even if Groh was trespassing at the time of the shooting, Reynolds did not have the right to resist the trespass by killing him. See OUJI-CR2d 8-14 (Committee Comments).
 Instruction No. 8-15A provides:
A person has no duty to retreat and has the right to stand his/her ground and meet force with force, including deadly force, if he/she is not engaged in an unlawful activity and is attacked in any place where he/she has a right to be, if he/she reasonably believes it is necessary to do so to prevent (death/(great bodily harm) to himself/herself/ another)/(the commission of a forcible felony).

HUDSON, VICE PRESIDING JUDGE, SPECIALLY CONCUR:
¶1 I concur in today's decision but write separately to address two distinct issues: (1) Appellant's compelled disclosure of the surveillance system password; and (2) Judge Lewis's remarks in his specially concurring opinion relating to Appellant's Stand Your Ground claim and McNeely v. State.
¶2 First, as to Appellant's compelled disclosure of the password, the Fifth Amendment provides that "No person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. To qualify for the Fifth Amendment privilege, the defendant must show: 1) a compelled; 2) testimonial communication or act; 3) that is incriminating. Doe v. United States, 487 U.S. 201, 207 (1988); Fisher v. United States, 425 U.S. 391, 408 (1976). In the present case, there is no question that Appellant's disclosure of the password was both compelled by the police and testimonial.

¶3 "[I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." Doe, 487 U.S. at 210. Here, the defendant's compelled disclosure of the password to authorities required the disclosure of the contents of his own mind to communicate some fact, viz., the password, and was therefore testimonial. United States v. Hubbell, 530 U.S. 27, 43 (2000); Curcio v. United States, 354 U.S. 118, 128 (1957).
¶4 The compelled, testimonial disclosure of the password however was not privileged under the Fifth Amendment because authorities discovered early in the investigation from an independent source about the existence of the surveillance system, that it was password protected, that Appellant controlled the surveillance system, and the likelihood that it contained relevant evidence showing the killing. Indeed, police already had obtained a search warrant for the surveillance system. Authorities were aware of its existence in the defendant's possession and control, the likely relevance of the video contained on the machine and police were able to prove the authenticity of the video by independent means. Any testimonial aspect of the defendant's password disclosure thus was a "foregone conclusion" under the Supreme Court's Fifth Amendment jurisprudence and there was no testimonial self-incrimination. See Fisher, 425 U.S. at 411.
¶5 The Supreme Court has recognized "that 'the act of production' itself may implicitly communicate 'statements of fact.'" Hubbell, 530 U.S. at 36. In the present case, the "compelled testimony" relevant to this case is not the contents of the surveillance video itself but the defendant's disclosure of the password. See id. at 40. To the extent that the defendant's disclosure of the password can be construed as incriminating, Doe, 487 U.S. at 208-09 n.6, there again was no testimonial disclosure for the reasons discussed earlier. Appellant's act of producing the password "was not testimonial because [the police] had knowledge of each fact that had the potential of being testimonial." In re Grand Jury Subpoena Duces Tecum Dated March 25, 2011, 670 F.3d 1335, 1345 (11thFisher, 425 U.S. at 411 (quoting In re Harris, 221 U.S. 274, 279 (1911)). Under the total circumstances presented here, the district court did not abuse its discretion in denying the defendant's motion to suppress and the challenged surveillance video was properly admitted.
¶6 Second, contrary to Judge Lewis's assertions in his specially concurring opinion, the Court in McNeely correctly found at that time that while "a direct appeal is not a true substitute for the interlocutory appeal . . . , there [was] simply no statutorily authorized means under existing law to address the issue pretrial[.]" McNeely, , ¶ 4, , 1274--75 (emphasis added). See also Id. at ¶¶ 1, 4, 422 P.3d at 1276--77 (Lumpkin, P.J., Specially Concurring); Id. at ¶¶ 1, 3, 422 P.3d at 1277 (Rowland, J., Specially Concurring). The subsequent legislative action touted by my good colleague confirms the Court got it right. In the 2022 legislative session, the Legislature heeded the Court's call for legislative action in McNeely, and in their wisdom, expressly provided both sides with the required statutory avenue to appeal a pretrial Stand Your Ground immunity ruling. See 2022 Okla. Sess. Laws, c. 209, §§ 1-2 (SB 1742), amending and (eff. Nov. 1, 2022).
FOOTNOTES
 , .

LUMPKIN, JUDGE, SPECIALLY CONCURRING:
¶1 I concur in the court's opinion in this case and write to point out two issues, i.e., the "foregone conclusion" exception and the use of the word "immunity" in the discussion of Proposition 2.
¶2 I agree with the adoption and application of the "foregone conclusion" exception and want to emphasize this is not a stand-alone exception to the Fifth Amendment protections against self-incrimination. It is an exception that must be applied when coupled with the protections of the Fourth Amendment. The reason the exception applied in this case is because probable cause had been presented to a magistrate and a search warrant had been issued for the search of the DVD. This fact, together with the statements taken by investigators, made it a foregone conclusion the passcode would be discovered. While the United States Supreme Court has not issued an opinion addressing the digital age, the decision in Fisher v. United States, 425 U.S. 391 (1976), gives us a framework with which to apply the exception. The citation to the methods used by other states to address the digital age application of this exception is interesting reading, but the cited cases are not binding precedent for this Court to follow. In Doe v. United States, 487 U.S. 201, 208-10 (1988), the Court determined that the word "testimonial" for purposes of the Fifth Amendment means "an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information" which itself is incriminating. While the passcode in this case may contain some testimonial attributes, it is not itself incriminating and does not warrant protection of the Fifth Amendment. In other situations, a case may show additional facts and characteristics that would rise to the level of protected speech but not in this case.
¶3 In Proposition 2, the Court discusses the application of , commonly referred to as the Stand Your Ground Act. This statute and its application have been addressed in several unpublished cases. In one of those, David Edward Bloebaum v. State, Case No. F-2014-989 (January 24, 2017) unpublished, I pointed out the inappropriate use of the term "immunity" in the statute, as follows:
In fact, the use of the term "immunity" is not totally appropriate [under Section 1289.25] since only the executive branch of the government, i.e., the prosecutor, can propose a grant of immunity. See Mills v. State, , ¶ 12, , 882 ("[T]he immunity provision in Art. II, § 27 of the Oklahoma Constitution[] extends the privilege only to witnesses testifying for the State."); United States v. Apperson, 441 F.3d 1162, 1203-04 (10th Cir. 2006) (holding courts have no inherent authority to grant a witness use immunity in absence of prosecution's deliberate attempt to distort fact finding process); United States v. LaHue, 261 F.3d 993, 1014 (10thSee Harris v. State, , ¶ 17, 841 P.2d 587, 601 (holding immunity attaches after hearing before court reporter, when court approves written immunity agreement with written order).
Id., Lumpkin, P.J., specially concurring.
¶4 The better method with which to address actions raising Section 1289.25 claims, reflecting consistency with our statutes and case law, is to question whether the use of deadly force is "justified" when the requirements of the statute are met. As discussed above, the State is the only authority which can grant immunity from prosecution. In Oklahoma, District Attorneys have the authority to investigate and initiate criminal charges and to determine whether the use of deadly force is justified pursuant to Section 1289.25. The Legislature should amend the statute to make its wording consistent with other statutes and our case law, thus resolving any potential conflicts in its application.
FOOTNOTES
 This is not unrelated to the definition of the word "testimonial" found in in Crawford v. Washington, 541 U.S. 36, (2004). The Court considered the word "testimonial" in the Sixth Amendment context to mean witness statements, made other than at trial, in ex parte in-court testimony, in affidavits, as part of a custodial examination, in a deposition, confession or in a similar pretrial statement that a declarant would reasonably expect to be used in the prosecution of a criminal case. Id., at 51-53. Thus, while the definitions of the word "testimonial" differ in the context of the two amendments, they are similar since in either context, the statement or communication must be one that is probative of an accused's guilt.

LEWIS, JUDGE, SPECIALLY CONCURRING:
¶1 I agree that Appellant's disclosure of the password to his recording system did not violate his privilege against self-incrimination. Neither the password, nor Appellant's knowledge of the password, constituted any evidence of a crime. These facts were not self-incriminating in the context presented here, and merely permitted access already authorized by the court to recordings which were neither incriminating testimony themselves nor immune from seizure under the warrant, the latter point being implicitly conceded.
¶2 I also concur in the allocation of the burden of proof to the defendant by a preponderance of the evidence in a pre-trial determination of a claim of Stand Your Ground immunity. I would add that the trial court can properly consider, in connection with its ruling on an immunity claim, any relevant portions of a transcript from preliminary examination, if offered by a party in the Stand Your Ground hearing.
¶3 The Court's misguided and incoherent policy of reviewing Stand Your Ground immunity claims on direct appeal from a conviction, from which I dissented when it was adopted in McNeely v. State, , , 1279-80, 1280-1282 (Lewis, V.P.J., and Kuehn, J., separately dissenting), has been superceded by statute in the most recent legislative session by HB 1742. See Okla. Sess. Laws 2022, § 209, amending (providing for stay of proceedings and appeal from denial of a pretrial motion for Stand Your Ground immunity within 10 days of the denial of the motion).
¶4 That said, the trial court properly denied Appellant's claim of Stand Your Ground immunity. The preponderance of the evidence establishes that Appellant's use of deadly force was not preceded or justified by an intruder "unlawfully and forcefully entering" or remaining on Appellant's premises; nor was the deadly force prompted by any reasonable belief that it was necessary to prevent a forcible felony. See (B)(1), (2). Appellant was properly prosecuted for, and convicted of, intentional murder.